**CARGO PARTNER AG,**
**Plaintiff–Appellant,**

v.

**ALBATRANS, INC. and Chase, Leavitt (Customhouse Brokers) Inc.,**
**Defendants–Appellees.**

**Docket No. 02–9322.**

United States Court of Appeals, Second Circuit.

Argued: April 23, 2003.
Decided: Dec. 9, 2003.

Stephen M. Harnik, Harnik & Finkelstein, New York, NY, for Plaintiff–Appellant.

Laura B. Hoguet, Hoguet Newman & Regal, LLP (Luisa K. Hagemeier, of counsel), New York, NY, for Defendant–Appellee Albatrans, Inc.

Before: CALABRESI, F.I. PARKER,[*] and SACK, Circuit Judges.

SACK, Circuit Judge.

The plaintiff-appellant Cargo Partner AG appeals from a decision and order of the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge*) dismissing Cargo Partner's claims against the defendant-appellee Albatrans, Inc. Cargo Partner brought this diversity action against the defendant-appellee Chase, Leavitt (Customhouse Brokers) Inc. ("Chase–Leavitt") seeking to recover on a trade debt owed by Chase–Leavitt to Cargo Partner. Cargo Partner also brought suit against Albatrans, alleg-

---

[*] The Honorable Fred I. Parker participated in the oral argument of this appeal but died before this opinion was prepared. The case is being decided by Judges Calabresi and Sack pursuant to Second Circuit Rule § 0.14.

ing that by purchasing all of Chase–Leavitt's assets, Albatrans became liable for Chase–Leavitt's debts, including its debt to Cargo Partner. Cargo Partner relied on a variety of theories in its attempt to demonstrate Albatrans's liability, all of which Magistrate Judge Douglas F. Eaton rejected in a report and recommendation, which the district court later adopted. Having concluded that Albatrans was not liable for Chase–Leavitt's debts, the district court granted Albatrans's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Cargo Partner takes an interlocutory appeal by permission, pursuant to 28 U.S.C. § 1292(b), arguing that Albatrans is liable for Chase–Leavitt's debts under the "de facto merger" doctrine as recently interpreted by decisions of an Appellate Division of the New York Supreme Court. Albatrans contends that it is not liable because there can be no de facto merger when, as here, there is no continuity between the stockholders of the selling corporation and the purchasing corporation post-acquisition. For the reasons that follow, we agree with Albatrans and therefore affirm.

## BACKGROUND

Cargo Partner, Albatrans, and Chase–Leavitt are in the shipping business. Between 1999 and 2001, Chase–Leavitt incurred a debt to Cargo Partner of approximately $240,000 for services rendered by Cargo Partner to Chase–Leavitt.[1] On February 7, 2001, Albatrans entered into an agreement with Chase–Leavitt and its sole shareholder, Alison Leavitt, to purchase all of Chase–Leavitt's assets.

In connection with the acquisition, Chase–Leavitt, which holds a federal customs brokerage license allowing it to perform customs services for clients, *see* 19 U.S.C. § 1641(b)(1), agreed to provide its customs brokerage services exclusively to Albatrans until Albatrans (or one of its subsidiaries) acquired such a license. During this interim period, apparently to allow Albatrans to use Chase–Leavitt's license while Albatrans was seeking one of its own, Chase–Leavitt was to operate as a distinct "profit center" within Albatrans, using the assets it sold to Albatrans for that purpose. Letter Agreement by Albatrans, Inc. To Purchase Assets of Chase–Leavitt, at 4 (Feb. 6, 2001). Chase–Leavitt was required to "accept the advice and direction" of managers hired by Albatrans in this pursuit. *Id.* After Albatrans acquired a customs brokerage license, it would have the option of causing Chase–Leavitt to discontinue operations, or "conduct[ing] Chase–Leavitt's b]usiness in its own or under a subsidiary's name." *Id.* at 6–7.

The acquisition agreement also required Leavitt to continue in Chase–Leavitt's employ until Albatrans obtained the license and gave Albatrans the option of continuing her employment for an additional five years on specified terms. Leavitt agreed to indemnify Albatrans for any breach by Chase–Leavitt of its obligations under the agreement and for any liabilities of Chase–Leavitt incurred before the agreement's execution, which obligation she secured with a mortgage on her personal residence. In exchange, Chase–Leavitt was to be paid a declining percentage of profits generated by the "profit center" over the ensuing five years, with $250,000 paid in

---

**1.** We assume the existence of the debt for the purpose of this appeal. *See ICOM Holding, Inc. v. MCI Worldcom, Inc.,* 238 F.3d 219, 221 (2d Cir.2001) (holding that on review of a district court's grant of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), we "accept[ ] all allegations in the complaint as true and draw[ ] all inferences in favor of the plaintiff").

advance immediately upon the close of the transaction.

In March 2001, Cargo Partner commenced a diversity action against Chase–Leavitt and Albatrans in the United States District Court for the Southern District of New York asserting that Albatrans was liable for Chase–Leavitt's debt to Cargo Partner. One of Cargo's theories of recovery—which underlies the only issue on this appeal—was based upon the common-law "de facto merger" doctrine. Albatrans moved to dismiss or, in the alternative, for summary judgment. The district court referred the motion to Magistrate Judge Douglas F. Eaton.

In due course, the magistrate judge issued a report and recommendation to the district court concluding that all claims against Albatrans should be dismissed. *Cargo Partner AG v. Albatrans Inc.,* 207 F.Supp.2d 86, 118 (S.D.N.Y.2002). The magistrate judge decided that Cargo Partner had not pled facts sufficient to support a finding that there had been a de facto merger between Albatrans and Chase–Leavitt because Cargo Partner had not alleged that Leavitt received any ownership interest in Albatrans after the asset sale. *Id.* at 113–14. The magistrate judge concluded that the doctrine of de facto merger applies only when a merger of corporate entities is disguised as some other transaction, and that a necessary factor is continuity of ownership between the predecessor and successor entities. *Id.* at 104–05. Because Leavitt received no ownership interest in Albatrans, there was no de facto merger.

The district court adopted the magistrate judge's report and recommendation in its entirety, *id.* at 90, dismissed Cargo Partner's complaint with respect to Albatrans, *see id.,* and certified the following question for interlocutory appeal to this Court pursuant to 28 U.S.C. § 1292(b):

> Whether the New York State Court of Appeals would apply the weighing of four factors recognized by the Courts of the State of New York as potentially applicable to whether the "de facto merger" exception applies to a transaction styled as a sale of assets, or whether that Court would adopt a definition of the "de facto merger" exception as requiring that a plaintiff must plead and prove all four of those four factors.

*Cargo Partner AG v. Albatrans, Inc.,* No. 01–Civ–2609 (DAB), slip op. at 2, 2002 U.S. Dist. LEXIS 18325, at *3 (S.D.N.Y. Apr. 24, 2002). We agreed to hear the appeal. *Cargo Partner AG v. Albatrans, Inc.,* No. 02–8013 (2d Cir. Nov. 22, 2002).

## DISCUSSION

### I. Standard of Review

We review the district court's decision to grant a Rule 12(b)(6) motion *de novo. Kalnit v. Eichler,* 264 F.3d 131, 137–38 (2d Cir.2001). Dismissal is not warranted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim [that] would entitle [it] to relief." *Id.* at 138 (internal quotation marks omitted). We thus "accept[ ] all factual allegations in the complaint as true and draw[ ] all reasonable inferences in the plaintiff's favor." *Id.* at 137–38 (internal quotation marks omitted).

### II. De Facto Merger

■ It is undisputed that New York law applies to this case. Under New York law, there are at least three ways in which a corporation can acquire the business of another: The purchaser can buy the seller's capital stock, it can buy the seller's assets, or it can merge with the seller to

form a single corporation.[2] In the first case, the purchaser does not become liable for the seller's debts unless the stringent requirements for piercing the corporate veil are met. *See TNS Holdings, Inc. v. MKI Securities Corp.*, 92 N.Y.2d 335, 339, 703 N.E.2d 749, 751, 680 N.Y.S.2d 891, 893 (1998) (discussing veil piercing). Likewise, the purchaser of a corporation's assets does not, as a result of the purchase, ordinarily become liable for the seller's debts. *See Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244–45, 451 N.E.2d 195, 198, 464 N.Y.S.2d 437, 440 (1983) (holding that ordinarily, a corporation bears no responsibility for the prior tort debts of another corporation whose assets it has purchased); *Arnold Graphics Indus. v. Indep. Agent Ctr., Inc.*, 775 F.2d 38 (2d Cir.1985) (applying this principle to a contract debt). The amount paid for the assets would ordinarily be available to satisfy those debts, at least in part. So long as the buyer pays a bona fide, arms-length price for the assets, there is no unfairness to creditors in thus limiting recovery to the proceeds of the sale—cash or other consideration roughly equal to the value of the purchased assets would take the place of the purchased assets as a resource for satisfying the seller's debts. Moreover, as the magistrate judge observed, allowing creditors to collect against the purchasers of insolvent debtors' assets would "give the creditors a windfall by increasing the funds available compared to what would have been available if no sale had taken place." *Cargo Partner*, 207 F.Supp.2d at 112. Only in the third case, when two corporations merge to become a single entity, is the successor corporation automatically liable for the debts of both predecessors; it *is* both predecessors.

■ New York recognizes four common-law exceptions to the rule that an asset purchaser is not liable for the seller's debts, applying to: (1) a buyer who formally assumes a seller's debts; (2) transactions undertaken to defraud creditors; (3) a buyer who de facto merged with a seller; and (4) a buyer that is a mere continuation of a seller. *See Schumacher*, 59 N.Y.2d at 245, 451 N.E.2d at 198, 464 N.Y.S.2d at 440; *see also* 10 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 4880 (2002). Only the third exception, the doctrine of de facto merger, is relevant to this appeal.[3]

■ A de facto merger occurs when a transaction, although not in form a merger, is in substance "a consolidation or merger of seller and purchaser." *Schumacher*, 59 N.Y.2d at 245, 451 N.E.2d at 198, 464 N.Y.S.2d at 440. Applying New York law, we have observed that:

---

**2.** According to a leading treatise:

> The three types of acquisitive reorganizations accorded tax-free treatment by the Internal Revenue Code are as follows:
> 1. A statutory merger or consolidation, which is known for federal income tax purposes as a Type A reorganization.
> 2. An acquisition of stock of a target corporation in exchange for voting stock of the acquiring corporation, or a Type B reorganization.
> 3. An acquisition of substantially all the assets of a target corporation in exchange for voting stock of the acquiring corporation, which is known as a Type C reorganization.
>
> 14A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 6970.147 (2002) (footnotes omitted).

**3.** Some courts have observed that the mere-continuation and de-facto-merger doctrines are so similar that they may be considered a single exception. *E.g., Nat'l Gypsum Co. v. Cont'l Brands Corp.*, 895 F.Supp. 328, 336 (D.Mass.1995); *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F.Supp. 265, 275 (D.N.J.1994); *Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529, 1535 (S.D.N.Y.1985).

[T]o find that a *de facto* merger has occurred there must be [1] a continuity of the selling corporation, evidenced by the same management, personnel, assets and physical location; [2] a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock; [3] a dissolution of the selling corporation[;] and [4] the assumption of liabilities by the purchaser.

*Arnold Graphics Indus.*, 775 F.2d at 42 (quoting *Ladjevardian v. Laidlaw–Coggeshall, Inc.*, 431 F.Supp. 834, 839 (S.D.N.Y. 1977)) (first brackets in original).[4]

■ Cargo Partner concedes that it lacks "any factual basis," as required by Fed.R.Civ.P. 11(b)(3), on which to plead continuity of ownership between Chase–Leavitt and Albatrans. Appellant's Br. at 10. It argues instead that the New York courts have adopted a more relaxed standard for determining that a sale of assets was a de facto merger since our decision in *Arnold.*

In *Fitzgerald v. Fahnestock & Co.*, 286 A.D.2d 573, 730 N.Y.S.2d 70 (1st Dep't 2001), the Appellate Division, First Department, concluded that the

hallmarks of a de facto merger include: [1] continuity of ownership; [2] cessation of ordinary business and dissolution of the acquired corporation as soon as possible; [3] assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and, [4] continuity of management, personnel, physical location, assets and general business operation.

*Id.*, 286 A.D.2d at 574, 730 N.Y.S.2d at 71 (citing *Sweatland v. ·Park Corp.*, 181 A.D.2d 243, 245–46, 587 N.Y.S.2d 54, 56 (4th Dep't 1992) (citing *Arnold* )). But the court noted that "[n]ot all of these elements are necessary to find a de facto merger." *Id.*, 286 A.D.2d at 574–75, 730 N.Y.S.2d at 71; *accord Sweatland,* 181 A.D.2d at 246, 587 N.Y.S.2d at 56. Cargo Partner argues that *Fitzgerald,* not *Arnold,* states the present law of New York and that, under *Fitzgerald,* a de facto merger may be found without fulfillment of the last factor, continuity of ownership.

We have no need to resolve the asserted conflict between *Arnold* and *Fitzgerald* or determine whether all four factors must be present for there to be a de facto merger. Whichever test applies, we are confident that the doctrine of de facto merger in New York does not make a corporation that purchases assets liable for the seller's contract debts absent continuity of ownership.

The purpose of the doctrine of de facto merger is to "avoid[ the] patent injustice which might befall a party simply because a merger has been called something else." *In re Penn Central Securities Litig.*, 367 F.Supp. 1158, 1170 (E.D.Pa.1973); *accord SmithKline Beecham Corp. v. Rohm & Haas Co.*, 89 F.3d 154, 164 (3d Cir.1996) (quoting *In re Penn Central* ); *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 312 (3d Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985) (quoting *In re Penn Central* ); *Binder v. Bristol–Myers Squibb, Co.*, 184 F.Supp.2d 762, 770 (N.D.Ill.2001) (quoting *In re Penn Central* ); *Perl v. IU Int'l Corp.*, 61 Haw.

---

4. For example, a transaction in which a corporation acquires the assets of another corporation by (1) purchasing the assets of the seller with its stock; (2) assuming the liabilities of the seller; and (3) continuing the operations of the seller through itself but dissolving the seller would likely be treated as a de facto merger. *Cf. Beck v. Roper Whitney, Inc.*, 190 F.Supp.2d 524, 535 (W.D.N.Y.2001) ("The classic example of a de facto merger is a transaction in which the purchasing corporation pays for the acquired assets with shares of its own stock." (internal quotation marks omitted)).

622, 635, 607 P.2d 1036, 1043 (1980). While each of the four factors in *Fitzgerald* (and their similar counterparts in *Arnold*) distinguish mergers from asset sales, continuity of ownership is the essence of a merger. *Cf.* 26 U.S.C. §§ 354(a), 361(a), 368(a)(1) (defining a tax-free "reorganization" to include, *inter alia,* a statutory merger and an asset sale in which there is continuity of ownership). It is, by contrast, the nature of an asset sale that the seller's ownership interest in the entity is given up in exchange for consideration; the parties do not become owners together of what formerly belonged to each. Continuity of ownership might not alone establish a de facto merger, but as the magistrate judge correctly observed, it "*is* the 'substance'" of a merger. *Cargo Partner,* 207 F.Supp.2d at 104 (emphasis in original). Because there is no continuity of ownership here, the asset purchase was not "a merger ... called something else."

To be sure, *Fitzgerald* speaks of "continuity of ownership," 286 A.D.2d at 574, 730 N.Y.S.2d at 71, while *Arnold* talks in terms of "continuity of stockholders," 775 F.2d at 42. But the former is simply a more general way to state the latter. And, for our purposes, it is a distinction without a difference. Leavitt's unsecured contractual interest (through her ownership of equity in Chase–Leavitt) in limited future profits generated using Chase–Leavitt's former assets establishes neither continued "ownership" nor "stockholdings."

The two cases cited by Cargo Partner for its argument, *Fitzgerald* and *Ladenburg Thalmann & Co. v. Tim's Amusements, Inc.,* 275 A.D.2d 243, 712 N.Y.S.2d 526 (1st Dep't 2000), are not to the contrary. In *Fitzgerald,* the court denied a motion to dismiss a claim relying on the de facto merger doctrine for liability, in which the buying corporation owned all of the selling corporation's stock when the seller's assets were transferred to it. 286 A.D.2d at 575, 730 N.Y.S.2d at 72. In *Ladenburg Thalmann,* the court concluded that the plaintiff properly alleged a de facto merger in its pleadings when a parent corporation owned 20% of the corporation selling its assets and 72% of the corporation to which the assets were transferred. 275 A.D.2d at 248, 712 N.Y.S.2d at 530. There was continuity of stockholders (and thus ownership) in both cases.

It is true that a number of states, beginning with Michigan in *Turner v. Bituminous Casualty Co.,* 397 Mich. 406, 429–30, 244 N.W.2d 873, 883 (1976), and California in *Ray v. Alad Corp.,* 19 Cal.3d 22, 30–34, 560 P.2d 3, 8–11, 136 Cal.Rptr. 574, 579–82 (1977), have relaxed the requirement of continuity of ownership in products-liability cases. *E.g., Andrews v. John E. Smith's Sons Co.,* 369 So.2d 781, 785–86 (Ala.1979); *Savage Arms, Inc. v. W. Auto Supply Co.,* 18 P.3d 49, 55–57 (Alaska 2001); *Ramirez v. Amsted Indus., Inc.,* 171 N.J.Super. 261, 408 A.2d 818, 824–25 (N.J.Super.1979), *aff'd,* 86 N.J. 332, 431 A.2d 811 (1981). *But see Downtowner, Inc. v. Acrometal Prods., Inc.,* 347 N.W.2d 118, 124–25 (N.D.1984) (rejecting *Turner* and *Ray*); *Flaugher v. Cone Automatic Mach. Co.,* 30 Ohio St.3d 60, 507 N.E.2d 331, 335–37 (1987) (same). Although some New York courts have applied this rule, *e.g., Hart v. Bruno Mach. Corp.,* 250 A.D.2d 58, 60–61, 679 N.Y.S.2d 740, 742 (3d Dept.1998); *Wensing v. Paris Indus.-N.Y.,* 158 A.D.2d 164, 167–68, 558 N.Y.S.2d 692, 694–95 (3d Dept.1990), the New York Court of Appeals declined to adopt it, *Schumacher,* 59 N.Y.2d at 245, 451 N.E.2d at 198, 464 N.Y.S.2d at 440. As far as we know it has never been applied, in this state or elsewhere, outside of the products-liability context. This apparently reflects

its use, specific to that area of law, to maintain strict liability for products despite the transfer of the assets that were used to produce them. *See Ray*, 19 Cal.3d at 31, 560 P.2d at 8–9, 136 Cal.Rptr. at 579–80; *Turner*, 397 Mich. at 416–24, 244 N.W.2d at 877–81; *accord Bud Antle, Inc. v. E. Foods, Inc.*, 758 F.2d 1451, 1458 n. 1 (11th Cir.1985) (observing that the modified rule of de facto merger applied by some states in products-liability cases does not apply to other contexts); *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F.Supp. 265, 272 (D.N.J.1994) (same); *Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 348–49, 617 N.E.2d 1129, 1133 (1993) (same).

## CONCLUSION

For the foregoing reasons, the decision and order of the district court dismissing the plaintiff's complaint with respect to Cargo Partner's assertion of the de facto merger doctrine is affirmed.