Washington Mut. Bank, FA v SIB Mtge. Corp. (2004 NY Slip Op 50594(U))

[*1]

Washington Mut. Bank, FA v SIB Mtge. Corp.

2004 NY Slip Op 50594(U)

Decided on June 18, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 18, 2004

Supreme Court, Kings County
Washington Mutual Bank, FA, Plaintiff,
against
SIB Mortgage Corp. d/b/a Ivy Mortgage, Defendant.
1281/04

For Plaintiff: Thomas J. Marino, Esq., Dunnington, Bartholow & Miller LLP, 666 Third Avenue, New York, New York 10017. For Defendant: Thomas J. Hall, Esq., Hall & Hall LLP, 57 Beach Street, Staten Island, New York 10304

Carolyn E. Demarest, J.
In this action by plaintiff Washington Mutual Bank, F.A. (plaintiff), alleging that defendant SIB Mortgage Corp. d/b/a Ivy Mortgage (SIB) is the successor in interest to the liabilities of Brucha Mortgage Bankers Corp. (Brucha) upon a theory of de facto merger and seeking to recover from SIB a default judgment obtained by Fleet Mortgage (Fleet) as against Brucha under a successor liability theory, SIB moves, pursuant to CPLR 3211 (a) (1) and (7), to dismiss plaintiff's complaint upon the grounds that plaintiff's complaint fails to state a cause of action, and that it has a defense founded upon documentary evidence.
Plaintiff is the successor in interest to Fleet Mortgage which merged into Washington Mutual Home Loans, Inc. on June 1, 2001. Plaintiff acquired all of the assets of Washington Mutual Home Loans, Inc. and became its successor in interest on March 1, 2002. Pursuant to the terms of a Correspondent Loan Purchase and Sale Agreement dated March 22, 1996, Brucha was to sell certain first mortgage loans to Fleet, which Fleet would sell to investors, and, in the event that Fleet had to repurchase the loans from these third-party investors, Brucha was required to repurchase the loans from Fleet. On January 19, 2001, Fleet instituted an action against Brucha in South Carolina, alleging that Brucha breached this agreement by failing to repurchase approximately $23 million worth of loans, which Fleet had to repurchase from investors. On May 29, 2001, Fleet obtained a default judgment against Brucha in the South Carolina action in the amount of $23,343,528.09. Thereafter, in October 2001, Fleet commenced an action in Supreme Court, Kings County, against Brucha, pursuant to CPLR 3213 and 5406, seeking to obtain a judgment in New York against Brucha based upon the South Carolina default judgment. On February 25, 2002, Fleet obtained a default [*2]judgment in the New York action in the sum of $25,716,787.99, the amount of the South Carolina default judgment, plus accrued interest on that judgment. SIB was not named as a party in either the South Carolina action or the New York action despite the fact that the alleged de facto merger, upon which plaintiff relies, would already have been effected nearly two years prior to the South Carolina action and approximately a year and a half prior to commencement of the New York action .
On January 14, 2004, plaintiff commenced the instant action against SIB, seeking to recover upon the default judgment which Fleet had obtained against Brucha based upon its claim of successor liability. Plaintiff's complaint alleges that, due to Brucha's participation in certain lending schemes, Brucha was required to surrender its mortgage banker license effective April 28, 2000, and that on April 25, 2000, Brucha entered into an agreement, entitled Regional Manager Employment Agreement ( Employment Agreement) with defendant SIB whereby Yisroel Rabinowitz (Rabinowitz), a 50% shareholder and chief executive officer of Brucha, would operate Universal Home Mortgage (UHM), as a division of SIB,using all essential operating assets of Brucha, including its sales personnel, customer lists, customer files, and business office. Specifically, plaintiff states that all of Brucha's former employees, with the exception of the servicing department, became employees of SIB d/b/a UHM; that Rabinowitz became president of UHM; and that the work of SIB d/b/a UHM continued at the same location where Brucha had conducted its mortgage business, using the same office furniture and equipment. Plaintiff further asserts that the Employment Agreement required Rabinowitz to place Brucha on an inactive status and prohibited him from conducting any mortgage-related business using Brucha's name. Plaintiff further claims that under the Employment Agreement, which is between SIB and Yisroel Rabinowitz as "Employee" and to which Brucha is not named as a party, Rabinowitz was allowed a salary of zero, but was entitled to all of the profits of the division, and that while SIB paid the operating expenses of UHM, Rabinowitz underwrote these expenses to the extent that they exceeded the profits of his division. Upon the termination of the employment relationship between SIB and Rabinowitz, the trade name of UHM would be transferred to Rabinowitz. Plaintiff contends that Brucha became "UHM" and that based upon this arrangement between SIB and Brucha, as evidenced by the Employment Agreement with Rabinowitz, SIB may be held liable to Washington Mutual upon the judgment recovered by Fleet against Brucha as the successor in interest to Brucha upon the theory that Brucha was effectively de facto merged into SIB.
As a general rule, the purchaser of a corporation's assets does not, as a result of the purchase, ordinarily become liable for the seller's debts (Schumacher v Richard Shear Co., 59 NY2d 239, 244-245). A common-law exception to this rule exists where there is de facto merger between the buyer and seller corporations (id. at 245). "A de facto merger occurs when a transaction, although not in form a merger, is in substance 'a consolidation or merger of seller and purchaser'" (Cargo Partner AG v Albatrans, Inc., 352 F3d 41, 45 [2d Cir], quoting Schumacher, 59 NY2d at 245). "The purpose of the doctrine of de facto merger is to 'avoid [the] patent injustice which might befall a party simply because a merger has been called something else'" (Cargo Partner AG, 352 F3d at 46, quoting In re Penn Central Securities Litigation, 367 F Supp 1158, 1170 [ED Pa]).
The four criteria necessary to find that a de facto merger has occurred are : [1] a continuity of the selling corporation, evidenced by the same management, personnel, assets and physical location; [2] a continuity of ownership in which the shareholders of the acquired corporation have been compensated with an interest (usually shares of stock) in the acquiring corporation; [3] a dissolution of the selling corporation; and [4] the assumption of liabilities of the acquired corporation by the purchaser (Arnold Graphics Indus. v Independent Agent Ctr., 775 F 2d 38, 42 [2d Cir], quoting Ladjevardian v Laidlaw-Coggeshall, Inc., 431 F Supp 834, 839 [SD NY]; see also Cargo Partner AG v Albatrans, Inc., supra, 352 F3d at 46; Schumacher v Richard Shear Co., supra, 59 NY2d at 245; Fitzgerald v Fahnestock & Co., 286 AD2d 573, 574 (1st Dep't, 2001); Employee Relations Assocs. Inc. v Xperius, 196 Misc 2d 485, 486 (Sup. Ct., Monroe Co., 2003)).
In its instant motion, SIB argues that plaintiff's complaint must be dismissed because the second of the above quoted requirements, continuity of ownership between Brucha and SIB, has not been satisfied. In support of this argument, SIB has submitted the sworn affidavit of James R. Coyle, [*3]the president and chief operating officer of SI Bank & Trust, wherein he states that SIB is a wholly owned subsidiary of SI Bank & Trust, and that SI Bank & Trust has always been the sole owner of all of the issued and outstanding stock of SIB. In response, plaintiff does not allege that there was any stock transfer between SIB and Brucha, and it is undisputed that Rabinowitz did not receive any stock in SIB (see Sands Bros. & Co. v Ettinger, __F Supp 2d __, 2004 WL 541846, *4 [SD NY]). Indeed, as noted above, plaintiff's complaint alleges that Rabinowtiz was only a 50% shareholder of Brucha, and plaintiff does not assert that the shareholders who owned the other 50% of Brucha ever became shareholders of, or have any ownership interest in SIB. Therefore, plaintiff has not shown any continuity of ownership between the stockholders of Brucha and SIB.
Plaintiff argues, however, that it is not necessary for it to fulfill the requirement of continuity of ownership to state a claim based upon a de facto merger. It points out that, in some cases, it has been held that not all of the four above cited factors are necessary to demonstrate that a de facto merger has occurred (see Fitzgerald v Fahnestock & Co., Inc., supra, 286 AD2d at 574-575; Sweatland v Park Corp., 181 AD2d 243,246 (4th Dep't 1992)). Despite the decision in Martorano v. Herman Miller, Inc., 255 AD2d 367 (2d Dep't, 1998), cited in support of defendant's motion, in which the Second Department held that, while relevant to products liability, "successor corporate liability after a de facto merger
. . . is inapplicable in an action to collect on a promissory note," examination of more recent authority compels the conclusion that the doctrine is and should be applied in actions premised upon a contractual obligation. See Cargo Partner AG v. Albatrans, Inc., supra, 352 F3d 41; Fitzgerald v. Fahnestock & Co., Inc., supra, 286 AD2d 573; Ladenburg Thalmann & Co., Inc. v. Tim's Amusements, Inc., 275 AD2d 243 (1st Dep't, 2000). See also,
Arnold Graphics Industries, Inc. v. Independent Agent Center, Inc., 775 F2d 38 (2dCir., 1985). Such authorities do, however, indicate that continuity of ownership is a prerequisite to the imposition of successor liability upon a theory of de facto merger in the context of contractual liability. Even in Sweatland v. Park Corp.,supra, 181 AD2d 243, upon which plaintiff relies for the proposition that continuity of ownership need not be demonstrated, Justice Denman made a distinction, based upon policy considerations, between tort liability for product defects and application of the doctrine of de facto merger to commercial obligations. See also, Employee Relations Assoc., Inc. v. Xperius, supra, 196 Misc. 2d 485, 487, in which the Court noted that continuity of ownership remains a "strict requirement" of de facto merger in the context of commercial cases under New York Law, noting that the considerations relevant to a contract case, such as the one at bar, are different from those involved in a tort case since commercial entities are generally presumed to have considered possible business failure and loss allocation when drafting the terms of a contract, whereas a purchaser of a retail product "has little power to demand such provisions and is entitled to assume that products placed in the stream of commerce are safe to use". Most recently, in Sands Brothers & Co., Ltd. v. Ettinger, 2004 WL 541846, applying New York law, the District Court for the Southern District of New York stated unequivocally, citing Cargo Partner: "The 'continuity of ownership' is an essential aspect of the doctrine of de facto merger."
Plaintiff's reliance upon Fitzgerald (286 AD2d at 574-575) and Ladenburg Thalmann & Co. (275 AD2d at 248) in support of its contention that the necessity for meeting the continuity of ownership requirement has been loosened in contract cases, is misplaced. In both of these cases, there was continuity of stockholders, and, thus, ownership. Indeed, in Cargo Partner AG (352 F3d at 47), the Second Circuit court expressly distinguished these cases and found that they did not stand for the proposition that the continuity of ownership requirement is relaxed in breach of contract cases. Plaintiff's reliance upon National Gypsum Co. v Continental Brands Corp. (895 F Supp 328, 341-342 [D Mass]), is also misplaced since that case involved a products liability claim. Thus, contrary to plaintiff's argument, the continuity of ownership remains, at the very least, a strict and essential requirement of the doctrine of de facto merger in contract cases (see Cargo Partner AG, 352 F3d at 46-47; Employee Relations Assocs., 196 Misc 2d at 487).
Plaintiff further argues that even if continuity of ownership remains a necessary requirement for a de facto merger to be found, it has alleged sufficient facts to show continuity of ownership. It [*4]contends that despite Rabinowitz's lack of stock ownership in SIB, he should be treated as an owner or equitable shareholder of SIB for purposes of satisfying this requirement. In support of this argument, plaintiff asserts that the Employment Agreement shows that Rabinowitz was more than a mere employee. Specifically, plaintiff asserts that pursuant to paragraphs 4 and 5 of the Employment Agreement, Rabinowitz was entitled to receive all profits of his division and was personally responsible to SIB for its losses.
Plaintiff's argument, however, is not supported by the terms of the Employment Agreement. Paragraph 4 of that Agreement provides that Rabinowitz shall receive as compensation certain discretionary funds remaining in the gross profit account after deduction of various expenses relating to the operation of the branch as defined therein and as affected by various factors. Paragraph 5(d) of the Employment Agreement simply sets forth the order in which items must be paid out of the gross profit account before payment can be made to "Employee" purusant to paragraph 4. An employer-employee relationship may be found to exist despite the fact that an employee is compensated based upon the success or profitability of the employee's efforts (see generally Matter of Song Lee, 260 AD2d 881, 881-882; Matter of Herzberg, 96 AD2d 1114, 1114-1115).
Paragraph 5 (c) of the Employment Agreement recognizes that a "Regional Manager" responsible for the operation of a branch may on occasion advance his own funds for branch expenses, but provides that if the Employee pays an unapproved expense out of his own money, he will not be reimbursed by SIB, evidencing strict control by SIB over the management of the branch. This paragraph also states that pre-approved expenses will only be reimbursed to the extent that there is a balance in the gross profit account and reimbursement of approved expenses would be deferred until an adequate balance was available. In fact, SIB points out that Rabinowitz did not assume the "rate risk" in being unable to deliver loans to investors on a timely basis or assume the liability for bad loans that were originated by the branch he managed. These liabilities fell upon SIB. Such terms are consistent with an employer-employee relationship.
The Employment Agreement also expressly states, in paragraph 13, that it "creates an employer-employee relationship between [SIB] and Rabinowitz" and contains terms which are classic indicia of an employer-employee relationship, such as providing that Rabinowitz "will be governed by instructions received from [SIB]," that he was "required to strictly adhere to [SIB's] guidelines and procedures," and that he was "required to attend Manager's Meetings." While Employee was permitted to "develop a sales force", all such employees remained employees of SIB subject to the rules and standards set by SIB. The loans in the "pipeline" (which is the inventory of a mortgage origination business) also remain the property of SIB after termination of the Employment Agreement.
While plaintiff relies upon the addendum to the Employment Agreement, which provides, in paragraph 1 (i), that "[u]pon the termination of the employee/employer relationship between [Rabinowitz] and [SIB], [SIB] will transfer the trade name [UHM] to Rabinowitz as part of the final accounting procedures,"to suggest that Rabinowitz actually acquired an ownership interest in SIB, the basic nature of Rabinowitz's relationship to SIB as that of employee is unaffected since there is no evidence that SIB conferred any interest in SIB upon Rabinowitz or Brucha, which, while in suspension, was never dissolved. Although Rabinowitz would acquire the name UHM upon termination of the Employment Agreement, he is precluded from removing files, investor lists or any other material relating to the business of the branch pursuant to paragraph 16 . The mere facts that the branch office remained in the same physical location and that other employees of Brucha also became employed by SIB, are insufficient, by themselves, to establish a de facto merger absent continuity of ownership (see Subramani v Bruno Mach. Corp., 289 AD2d 167, 168 (1st Dep't, 2001); Employee Relations Assocs., supra,196 Misc 2d at 487-488). It is not disputed that an entire department of Brucha, i.e., the mortgage servicing department, was eliminated and the employees of Brucha's mortgage servicing department were not employed by SIB.
Plaintiff's further allegation that the Employment Agreement was, in actuality, an illegal net branch agreement (which is disputed by SIB), is also unavailing. Even if proved, such allegation does not establish any continuity of ownership, as is required, in order for a de facto merger to have [*5]occurred. The relevance of this assertion to plaintiff's alleged right to recover Brucha's debt from defendant SIB eludes this Court.
 Finally, it is clear that the fourth criterion for de facto merger cannot be established in that there was no assumption of the liabilities of Brucha by SIB. Under the express terms of the addendum to the Employment Agreement, SIB did not acquire Brucha's assets or liabilities (see Sands Bros. & Co., 2004 WL 541846 at *4). In this regard, it is noted that the execution of the April 25, 2000 Employment Agreement of Rabinowitz by SIB occurred well prior to the commencement of both the South Carolina and New York actions and the rendering of the default judgments therein, and that SIB was never made a party to either of these actions. The fact that this plaintiff, Washington Mutual, did not at that time have any interest in the subject loans does not alter the effect of its predecessor in interest Fleet's failure to join SIB which had already employed Rabinowitz at the time of the suit.
Therefore, inasmuch as plaintiff has not alleged and cannot prove the essential requirements necessary to state a cause of action for successor liability under the doctrine of de facto merger, its complaint must be dismissed pursuant to CPLR §3211(a) (1) and (7).
Accordingly, SIB's motion to dismiss plaintiff's complaint is granted.
This constitutes the decision, order, and judgment of the court.