Steven CROWLEY, Plaintiff,

v.

VISIONMAKER, LLC, Palace Entertainment Holdings, Inc., as successor in interest to VisionMaker, LLC, MidOcean Partners, LP and MidOcean Partners II, LP, Defendants.

No. 06 Civ. 9388(DAB).

United States District Court,
S.D. New York.

Sept. 25, 2007.

Neal Brickman, The Law Office of Neal Brickman, Melinda Dus, New York, NY, Melinda May Dus, Lefkowitz, Louis & Sullivan, L.L.P., Jericho, NY, for Plaintiff.

Marc Jeffrey Schneider, Erica N. Shelby, Kent W. Easter, Stradling Yocca Carlson & Rauth, Newport Beach, CA, Danielle Caroline Lesser, Morrison Cohen Singer & Weinstein, LLP, New York, NY, for Defendants.

*MEMORANDUM & ORDER*

DEBORAH A. BATTS, District Judge.

Plaintiff Steven Crowley brought suit against Defendants VisionMaker, LLC ("VisionMaker"), Palace Entertainment Holdings, Inc. ("Palace Holdings"), MidOcean Partners LP and MidOcean Partners II, LP (collectively "MidOcean Defendants") to recover damages for the alleged breach of an agreement to provide financial advisory services. In his Amended Complaint, Plaintiff asserts four causes of action against VisionMaker and against Palace Holdings, as the alleged successor in interest to VisionMaker: (1) breach of contract, (2) promissory estoppel, (3) *quantum meruit* (4) and unjust enrichment. The Fifth Cause of Action contained in the Amended Complaint alleges that MidOcean Defendants tortiously induced VisionMaker to breach its contract with Plaintiff.

VisionMaker moves to dismiss the Amended Complaint, pursuant to Fed. R.Civ.P. 12(b)(6), on the principal ground that it did not breach its unambiguous written agreement with Plaintiff and therefore that Plaintiff is also precluded from seeking equitable relief with respect to the agreement. Palace Holdings and MidOcean Defendants also move to dismiss the Amended Complaint on the same grounds as VisionMaker. For the reasons that follow, the Defendants' Motions to Dismiss the Amended Complaint are GRANTED.

## I. BACKGROUND

Plaintiff alleges that "[o]n or about January 28, 2004, after substantial negotiation" he and VisionMaker entered into a written agreement (the "Agreement") whereby VisionMaker retained his financial advisory services. (Am.Compl. ¶ 8.) VisionMaker sought Plaintiff's financial advisory services in order to find "investors to invest in, or with, VisionMaker." (*Id.* ¶ 9.) A copy of the written Agreement between VisionMaker and Plaintiff is appended to the Amended Complaint and incorporated by reference. (*Id.* ¶ 10 & Ex. A.)

The Agreement[1] provides that its purpose is as follows:

---

1. The letter Agreement is addressed to John Cora, "President and CEO" of VisionMaker and appears to have been drafted by Plaintiff and his partner—who refer to themselves as

The purpose of this letter is to confirm the engagement of Brad Bohling[2] and Steven Crowley ("Advisor") to act as financial advisor to [VisionMaker] in connection with a potential transaction or series or combination of transactions (collectively, a "Transaction") involving the offer and sale of equity securities of [VisionMaker], or securities convertible into or exchangeable for equity securities of [VisionMaker].

(*Id.* Ex. A at 1.) Pursuant to the Agreement, Plaintiff would "evaluate the business and financial prospects of Vision-Maker, develop transaction plans, assist in financing and evaluate financing options, prepare and distribute offering materials, conduct due diligence, negotiate the structure and terms of any transaction, negotiate any transaction agreement and close that transaction." (*Id.* ¶ 11.)

In exchange for the provision of these services, VisionMaker agreed to pay Plaintiff promptly in cash, an advisory fee "based on the aggregate amount of funds invested in Equity Securities by investor(s)." (*Id.* Ex. A at 2.) The Agreement provided the following formula to determine the final advisory fee that would be due to Plaintiff as a result of securing outside investment in VisionMaker:

> First $100 million investment, fee equal to 6% of Transaction, plus Additional a [sic] fee equal to 5% of the next $50 million investment, plus A fee equal to 4% of the next $50 million investment, plus A fee of 3% of any additional other investment dollars.

(*Id.* at 3.) Provision is made for the payment of a "break-up fee of $250,000" in the event that Plaintiff secures an investment of at least "$20 million" but VisionMaker

chooses not to pursue the transaction. (*Id.*) In addition, the Agreement provides for reimbursement of "reasonable out-of-pocket expenses." (*Id.*) In the instant suit, Plaintiff seeks enforcement of the final advisory fee provision of the Agreement only. The Agreement provides, however, that the final advisory fee shall be due to Plaintiff only at "the closing of a Transaction(s)." (*Id.* at 2.)

The Agreement provides that it "may be terminated by either party ... upon thirty (30) days prior written notice to the other party" but that termination does not relieve VisionMaker of the obligation to pay any fee due to Plaintiff under the Agreement. (*Id.* at 3.) Plaintiff alleges that the Agreement was never terminated. (*Id.* ¶ 15.) The Agreement also explicitly provides that it shall be governed by New York law and that it "constitutes the sole agreement regarding the engagement of [Plaintiff] by VisionMaker, and may be amended only in writing." (*Id.* Ex. A at 4.)

Plaintiff alleges that, pursuant to the Agreement, beginning in January 2004, he "focused his efforts on pursuing opportunities for VisionMaker and raising equity capital for the same." (*Id.* ¶ 18.) In the spring of 2004, Plaintiff allegedly introduced VisionMaker to MidOcean Defendants and "cultivated a relationship with MidOcean and facilitated MidOcean's interest in investing in VisionMaker." (*Id.* ¶ 19.) Plaintiff also explored other possible sources of investment in VisionMaker in addition to MidOcean Defendants. (*Id.* ¶¶ 22–23.) Plaintiff alleges that his efforts on behalf of VisionMaker ultimately resulted in MidOcean Defendants' commitment

---

"Advisor"—for VisionMaker's review and endorsement. The Agreement states that "[i]n this letter, the Advisor has outlined *our* approach, timing and fees in performing finan-

cial advisory services for VisionMaker." (*Id.* Ex. A at 1.) (emphasis added).

**2.** Brad Bohling is not a party to this suit.

to purchase a third entity, Palace Entertainment, Inc. ("Palace Entertainment"), which is distinct from Palace Holdings, a named defendant in this suit.[3] (*Id.* ¶¶ 23–24.)

MidOcean Defendants and Palace Entertainment are not, of course, parties to the Agreement between Plaintiff and VisionMaker. Plaintiff thus acknowledges that neither he nor VisionMaker "had any control over MidOcean or its investment protocol." (*Id.* ¶ 25.) In structuring the transaction to purchase Palace Entertainment, MidOcean Defendants "tried to control all aspects of the transaction process, including but not limited to the economic terms and conditions of the same." (*Id.* ¶ 24.)

Prior to MidOcean Defendants' acquisition of Palace Entertainment, VisionMaker also apparently attempted to acquire that entity at auction through Plaintiff's efforts. (*Id.* ¶¶ 27–29.) Plaintiff also worked with several companies to "develop investment and acquisition strategies regarding [Palace Entertainment], as well as other financing options." (*Id.* ¶ 30.) Plaintiff alleges that, as a result of his efforts, MidOcean Defendants ultimately purchased Palace Entertainment on behalf of VisionMaker. (*Id.* ¶ 31.)

According to Plaintiff, "[t]hrough its purchase of [Palace Entertainment], MidOcean purchased 'securities convertible into or exchangeable for equity securities of [VisionMaker],'" under the Agreement. (*Id.* ¶ 41.) Plaintiff describes MidOcean Defendants' investment in VisionMaker as follows:

"MidOcean formed a new entity, Palace Entertainment Holdings, Inc., and invested fifty four million dollars ($54,000,000) in this new entity for the express purpose of purchasing Palace Entertainment, Inc., on VisionMaker's recommendation, knowing all the while that VisionMaker would supply all executives, senior management and personnel with the know-how necessary to operate and manage Palace."

(*Id.*) Plaintiff claims that "VisionMaker understood the transaction to be, in substance, an equity investment and/or the equivalent of an equity investment in VisionMaker" and that VisionMaker "treated, represented and described the transaction as such to [Plaintiff] and others." (*Id.* ¶ 42.)

Plaintiff acknowledges, however, that MidOcean Defendants' purchase of Palace Entertainment through Defendant Palace Holdings was "in lieu of directly investing in VisionMaker such that VisionMaker would purchase, own and operate [Palace Entertainment] outright...." (*Id.* ¶ 64.) Plaintiff alleges that since VisionMaker's co-founders received "shares of the new entity," Palace Holdings, and since these co-founders became managers of Palace Holdings, the purchase of Palace Entertainment by MidOcean Defendants entitles him to a final advisory fee pursuant to his Agreement with VisionMaker. (*Id.*) There is, however, no allegation that any entity directly invested in VisionMaker equity securities or any securities that could be converted into VisionMaker securities as a result of Plaintiff's efforts.

---

**3.** The Amended Complaint fudges the critical distinction between these two separate entities by frequently referring to both simply as "Palace". Palace Entertainment, Inc. is the pre-existing entity that MidOcean Defendants purchased in a transaction that forms the basis of the instant dispute. (Am.Compl.¶ 39.)

Defendant Palace Holdings, on the other hand, is an entity formed by MidOcean Defendants for the express purpose of effecting the purchase of Palace Entertainment, Inc.—Palace Entertainment, Inc. is not a party to this suit, while Palace Holdings is.

Plaintiff alleges that, following MidOcean Defendants' purchase of Palace Entertainment, Defendant Palace Holdings became the successor in interest to VisionMaker, claiming, upon information and belief, that "VisionMaker is merely a 'shell' company without any on-going concerns and exists in name only." (*Id.* ¶ 33.) Allegedly, "VisionMaker and its co-founders, CEO and COO licensed their skill, expertise and know-how to [Palace Holdings] with the express condition that they would forgo any activities competitive to [Palace Holdings]." (*Id.* ¶ 35.) Moreover, "[u]pon information and belief, based upon emails and oral representations made to [Plaintiff] in 2006 from the CEO and COO of [Palace Holdings], [Palace Holdings] had an express or implied agreement with VisionMaker to assume VisionMaker's liability vis-à-vis the contract between VisionMaker and [Plaintiff]." (*Id.* ¶ 36.) The Agreement expressly provides, however, that VisionMaker "acknowledges and agrees that [Plaintiff] has been retained to act as financial advisor to [VisionMaker]" and that the Agreement "is not on behalf of, nor intended to create any relationship with or due to, any other person." (*Id.* Ex. A at 4.) Plaintiff also acknowledges that VisionMaker was not formally dissolved. (*Id.* ¶ 45.)

The transaction by which MidOcean Defendants purchased Palace Entertainment through Palace Holdings closed in March 2006 and on or about March 23, 2006, Plaintiff demanded payment from VisionMaker under the terms of the Agreement. (*Id.* ¶¶ 46, 49.) Plaintiff claims that under the fee arrangement set forth in the Agreement, he is entitled to $3,240,000.00, i.e. six percent of the $54,000,000 that MidOcean Defendants invested in their purchase of Palace Entertainment. (*Id.* ¶ 49.)

Plaintiff alleges that "[i]n 2005 through March 2006, VisionMaker made affirmative representations and promises to [Plaintiff] that it would honor the Agreement in connection with the transaction," and that VisionMaker would pay Plaintiff. (*Id.* ¶ 51.) Plaintiff claims that he relied on these representations in continuing to provide services in connection with the deal between MidOcean Defendants and Palace Entertainment. (*Id.*) VisionMaker did not, however, produce payment and Plaintiff alleges that VisionMaker and/or Palace Holdings informed him in May 2006 that the failure to pay "directly resulted from a decision made by MidOcean." (*Id.* ¶ 52.) Plaintiff also alleges that VisionMaker made promises "both verbal and in writing throughout 2005 and 2006" that he would be paid for his services "irrespective of the Agreement" but he does not specifically allege that any such written promises effectively amended the terms of the Agreement. (*Id.* ¶ 76.)

## II. DISCUSSION

### A. Legal Standard

On a motion to dismiss a complaint under Fed.R.Civ.P. 12(b)(6), the Court "must accept the allegations contained therein as true and draw all reasonable inferences therefrom in favor of the plaintiff." *Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms. Group PLC*, 298 F.3d 136, 140 (2d Cir.2002) (citation omitted). On such a motion, the task of the Court "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir.2000) (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (internal quotations omitted)). "While a complaint attacked on a Rule 12(b)(6) motion does not need de-

tailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007). For purposes of a motion to dismiss, a complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference .... and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir.2000) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989)).

**B. Plaintiff's Breach of Contract Claim**

The Agreement between Plaintiff and VisionMaker is governed by New York law. (Am. Compl. Ex. A at 4.) To state a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of a contract; (2) that the plaintiff has performed his or her obligations under the contract; (3) that the defendant failed to perform his or her obligations thereunder; and (4) that plaintiff was thereby damaged. *See W.B. David & Co., Inc. v. DWA Communications, Inc.*, No. 02 Civ. 8479, 2004 WL 369147, at *2 (S.D.N.Y. Feb. 26, 2004); *Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99 Civ. 342, 1999 WL 544708, at *18 (S.D.N.Y. July 27, 1999). "In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Wolff v. Rare Medium, Inc.*, 171 F.Supp.2d 354, 358 (citing *Levy v. Bessemer Trust Co., N.A.*, No. 97 Civ.

1785, 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997)). Pleading requirements under the Federal Rules of Civil Procedure are construed liberally; however, "[l]iberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader .... [i]f it fails to do so, a motion under Rule 12(b)(6) will be granted." *Id.*

VisionMaker, Palace Holdings and MidOcean Defendants contend that Plaintiff fails to state a cause of action for breach of contract because he cannot plead that he had performed his obligations under the Agreement. VisionMaker specifically argues that the Agreement unambiguously provides that Plaintiff is entitled to a final advisory fee only at the close of a transaction involving an investor's purchase of "equity securities of [VisionMaker], or securities convertible into or exchangeable for equity securities of [Visionmaker]." (VisionMaker's Mem. at 11.) VisionMaker argues that MidOcean Defendants' purchase of Palace Entertainment through Palace Holdings simply did not constitute an equity investment in VisionMaker. (*Id.*)

Plaintiff responds that the Agreement's provision regarding purchase of "equity securities of [VisionMaker], or securities convertible into or exchangeable for equity securities of [Visionmaker]" is "broad and susceptible to more than one interpretation." (Pl.'s Opp. to VisionMaker Mot. at 9 [thereinafter "Pl.'s Opp."].) Plaintiff also claims that VisionMaker made express written and oral representations to him regarding the applicability of the Agreement to MidOcean Defendants' purchase of Palace Entertainment and therefore that the Court should consider "the parties' understanding of the Agreement and

the representations made after the Agreement was executed." (*Id.*)

"In reviewing a written contract, a trial court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use," and thus the court "ordinarily looks only at the wording used by the drafters who presumably understood what they intended." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 426, 428 (2d Cir.1992) (citing *Slatt v. Slatt*, 64 N.Y.2d 966, 488 N.Y.S.2d 645, 477 N.E.2d 1099 (1985)). It is "axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence." *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir.2002) (citing *United States v. Liranzo*, 944 F.2d 73, 77 (2d Cir.1991)). However, "when the language of a contract is ambiguous, its construction presents a question of fact," which of course precludes summary dismissal. *Jackson Heights Medical Group, P.C., v. Complex Corp.*, 222 A.D.2d 409, 411, 634 N.Y.S.2d 721, 722 (2d Dep't 1995) (citations omitted); *see also Seiden Assocs.*, 959 F.2d at 428 ("Where the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another, and where there is extrinsic evidence of the parties' actual intent, the meaning of the words becomes an issue of fact . . .").

Ambiguous language is "that which is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Seiden Assocs.*, 959 F.2d at 428 (quoting *Walk–In Medical Centers,*

*Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987)). Conversely, "[t]he language of a contract is not made ambiguous simply because the parties urge different interpretations," or "where one party's view 'strains the contract language beyond its reasonable and ordinary meaning.'" *Id.* (quoting *Bethlehem Steel Co. v. Turner Construction Co.*, 2 N.Y.2d 456, 459, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957)).

Although Plaintiff states that the operative provision of the Agreement is "not clear or limited", he does not attempt to demonstrate how that might be so. The Agreement provides that Plaintiff shall be entitled to a "final advisory fee" only if his efforts resulted in the closing of a "transaction or series or combination of transactions . . . involving the offer and sale of equity securities of [VisionMaker], or securities convertible into or exchangeable for equity securities of [VisionMaker]." (Am. Compl. Ex. A at 1.) There is nothing ambiguous about the term "equity securities" nor the clause that follows referring to other types of securities that may be changed into VisionMaker equity securities. There is no allegation in the Amended Complaint that Plaintiff closed any transaction that involved the sale of VisionMaker securities. MidOcean Defendants certainly are not alleged to have purchased any VisionMaker securities nor any securities that could be converted into such. Plaintiff in fact concedes that while he had initially approached MidOcean Defendants with the hope that they would invest in VisionMaker, "[a]fter MidOcean made its investment commitment, the structure of the transaction changed." (Pl.'s Opp. at 3.) MidOcean Defendants' transaction with Palace Entertainment appears to involve VisionMaker only to the extent that some of VisionMaker's corporate officers received stock and management positions in the newly formed Palace

Holdings entity. There is no allegation that VisionMaker itself sold any of its securities as a result of this transaction.

■ Plaintiff's breach of contract claim effectively asks the Court to disregard the plain meaning of the "equity securities of [VisionMaker]" term of the Agreement—which clearly limits the scope of the Agreement—and instead to read it and the following clause to mean that Plaintiff is entitled to payment for helping to close a transaction that has nothing to do with VisionMaker securities. The Court declines to do so. *See Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985) ("[A]n interpretation that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect"). The Court finds that the Agreement is clear and unambiguous as to its scope. Since the Agreement is unambiguous, Plaintiff's allegations regarding representations made after the execution of the Agreement are irrelevant. *See Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 293 F.Supp.2d 397, 413 (S.D.N.Y.2003) ("Extrinsic evidence is inadmissible to vary the terms of an unambiguous contract which purports to express the parties' entire agreement") (citing *Furey v. Guardian Life Ins. Co.*, 261 A.D.2d 355, 689 N.Y.S.2d 208 (2d Dep't 1999)). Plaintiff does not allege that his efforts resulted in the closing of a transaction for the sale of VisionMaker equity securities. Having failed to perform his obligations under the Agreement, Plaintiff is not entitled to the final advisory fee provided for in the plain language of the Agreement. And it therefore follows that VisionMaker did not breach the Agreement by failing to pay Plaintiff.[4] Accordingly, Defendants' Motions to Dismiss Plaintiff's breach of contract claim are hereby GRANTED.

## C. Defendants' Motions to Dismiss Plaintiff's Claims for Equitable Relief

■ VisionMaker and Palace Holdings have also moved to dismiss Plaintiff's claims of promissory estoppel, *quantum meruit* and unjust enrichment. Under New York law, " '[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.' " *Riverside Marketing, LLC v. SignatureCard, Inc.*, 425 F.Supp.2d 523, 534 (S.D.N.Y.2006) (quoting *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656, 516

---

4. Plaintiff's claim that Palace Holdings is liable for the alleged breach of the Agreement as the successor in interest to VisionMaker fails as a matter of law, not least because there was no breach of the Agreement. The Agreement clearly provides that it binds only Plaintiff and VisionMaker and that it does not "create any relationship with or due to, any other person." (Am. Compl. Ex. A at 4.) Additionally, Plaintiff has failed to adequately plead that Palace Holdings is the successor in interest to VisionMaker. *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44–45 (2d Cir. 2003). None of these transactions occurred in the instant case. However, a *de facto* merger may be found where there has been "[1] continuity of ownership; [2] cessation of ordinary business and dissolution of the acquired corporation as soon as possible; [3] assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and, [4] continuity of management, personnel, physical location, assets and general business operation" between the two entities. *Id.* at 46 (citations omitted). Plaintiff only conclusorily alleges that "Palace [Holdings] became VisionMaker's successor in interest" and that "VisionMaker is merely a 'shell' company." (Am.Compl. ¶ 35.) Plaintiff fails to address the second, third and fourth elements necessary to adequately plead successor in interest liability.

N.E.2d 190 (N.Y.1987)); *see also Foxley v. Sotheby's Inc.*, 893 F.Supp. 1224, 1234 (S.D.N.Y.1995) (on Rule 12(b)(6) motion to dismiss, court held that "quasi-contractual claims are not available where an express contract exists").

Courts have thus held, for example, that, "[p]romissory estoppel is a legal fiction designed to substitute for contractual consideration where one party relied on another's promise without having entered into an enforceable contract." *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F.Supp. 976, 993 (S.D.N.Y.1989) (citing E. Farnsworth, *Contracts*, § 2.19 at 89–98 (1982)). The Second Circuit has recently observed that "where a valid agreement exists between the parties, an action in *quantum meruit* to prevent unjust enrichment ordinarily is not available." *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 118 (2d Cir.2006). Likewise, where "there is an express contract governing the subject matter that was not breached, there can be no unjust enrichment." *Hartford*, 723 F.Supp. at 994.

There is no question here that the Agreement between Plaintiff and VisionMaker is valid and enforceable—indeed, Plaintiff seeks to recover under the provisions of the Agreement. Moreover, Plaintiff has failed to adequately plead that the Agreement was amended in writing. Since there is a valid, enforceable agreement in the instant case and since that agreement was not breached, Plaintiff is precluded from asserting any quasi-contractual claims related to it. Accordingly, Defendants' Motions to Dismiss Plaintiff's Second, Third and Fourth Causes of Action are hereby GRANTED.

### D. Plaintiff's Tortious Interference with Contract Claim

Plaintiff's Fifth Cause of Action is against MidOcean Defendants, alleging that they tortiously interfered with the Agreement between himself and VisionMaker. Under New York law, the elements of a tortious interference claim are: (1) that a valid contract exists; (2) that a "third party" had knowledge of the contract; (3) that the third party intentionally and improperly procured the breach of the contract; and (4) that the breach resulted in damage to the plaintiff. *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996) (citing *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 5, 134 N.E.2d 97 (1956); *Kaminski v. United Parcel Serv.*, 120 A.D.2d 409, 501 N.Y.S.2d 871, 873 (1st Dep't 1986)). Since there was no breach of the Agreement, Plaintiff's tortious interference claim necessarily fails. Accordingly, MidOcean Defendants' Motion to Dismiss Plaintiff's Fifth Cause of Action is hereby GRANTED.

### III. LEAVE TO REPLEAD

Even when a complaint has been dismissed, permission to amend it "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "While it is the usual practice upon granting a motion to dismiss to allow leave to replead," *Cohen v. Citibank*, No. 95 Civ 4826, 1997 WL 88378, at *2 (S.D.N.Y. Feb. 28, 1997), a court may dismiss without leave to amend when amendment would be futile. *Oneida Indian Nation of New York v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir.2003) (citations omitted), *reversed on other grounds by City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197, 125 S.Ct. 1478, 161 L.Ed.2d 386 (2005). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Id.* (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

It is clear that Plaintiff cannot allege a breach of the Agreement in connection with MidOcean Defendants' purchase of Palace Entertainment. Granting Plaintiff leave to replead the Amended Complaint would therefore be futile. Plaintiff is thus DENIED leave to replead.

## IV. CONCLUSION

For the foregoing reasons. Defendants' Motions to Dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) are GRANTED in their entirety. Plaintiff is DENIED leave to replead. The Clerk of Court is directed to close the docket in this case.

SO ORDERED.