DOUGLAS SWEATLAND, Respondent, v PARK CORPORATION, Appellant. (Appeal No. 1.)

Fourth Department, July 14, 1992

**APPEARANCES OF COUNSEL**

*Sugarman, Wallace, Manheim & Schoenwald (Laura Alderman* of counsel), for appellant.

*Bond, Schoeneck & King (Robert Kirchner* of counsel), for respondent.

**OPINION OF THE COURT**

DENMAN, P. J.

Plaintiff was injured in 1988 while using a plate-bending roller manufactured by Bertsch & Company. Before the accident, Bertsch had filed a Chapter 11 bankruptcy petition and had entered into an asset purchase agreement with defendant. The sale closed in May 1985, with defendant agreeing to purchase all real and personal property; all inventory, work-in-process, finished products, parts and supplies; all engineering, engineering drawings, patents, copyrights, licenses and know-how; the sole and exclusive right to own and use the trade name "Bertsch"; all customer lists, names, addresses and contact persons; and all files, correspondence and records pertaining to Bertsch's business. Defendant specifically assumed liability "with respect to claims, if any, arising with respect to products shipped by [defendant] under the Bertsch name after the date of closing".

Plaintiff commenced an action alleging that defendant is the successor in interest to Bertsch and therefore strictly liable for injuries resulting from defective design and manufacture of the plate-bending roller. Additionally, plaintiff alleged that defendant was liable for failure to warn. The IAS court denied defendant's motion for summary judgment, finding several material issues of fact: whether defendant assumed Bertsch's liability; whether defendant is a "continuation" of Bertsch; and whether defendant had a duty to warn customers of Bertsch about product defects.

Generally, a corporation which acquires the assets of another is not liable for the torts of its predecessor unless: (1) it expressly or impliedly assumed the predecessor's tort liability; (2) there was a consolidation or merger of seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape such obligations *(Schumacher v Richards Shear Co.,* 59 NY2d 239, 245). There being no allegation of fraud, we consider the applicability of the remaining three exceptions.

■ The agreement specifically provided that defendant assumed liability only for claims regarding products shipped under the Bertsch name after the date of closing. The plate-bending roller was shipped in 1954, over 30 years before the closing; thus, there is no implicit or express assumption of liability. Nor is the "continuation" exception applicable. Bertsch survived the transaction, albeit in bankruptcy, for several years *(see, Schumacher v Richards Shear Co., supra; Wensing v Paris Indus.-N. Y.,* 158 AD2d 164).

■ Plaintiff has raised an issue of material fact, however, regarding whether the transaction constituted a de facto merger *(see, Wensing v Paris Indus.-N. Y., supra).* Defendant acquired all of Bertsch's fixed assets and many of its intangible assets such as good will, engineering, patents, copyrights, and customer lists, as well as the right to use the trade name. Moreover, in its 1990 corporate "PROFILE", defendant advertises the Bertsch name and tradition. Under these circumstances, plaintiff should be allowed to conduct further discovery to determine whether the transaction constituted a de facto merger *(see, Wensing v Paris Indus.-N. Y., supra,* at 167).

Traditionally, courts have considered several factors in determining whether a de facto merger has occurred: (1) continuity of ownership; (2) a cessation of ordinary business and

dissolution of the predecessor as soon as practically and legally possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (4) a continuity of management, personnel, physical location, assets, and general business operation *(see, Arnold Graphics Indus. v Independent Agent Center,* 775 F2d 38; *Lumbard v Maglia, Inc.,* 621 F Supp 1529).* However, "[n]ot all of these factors are needed to demonstrate a merger; rather, these factors are only indicators that tend to show a de facto merger" *(Menacho v Adamson United Co.,* 420 F Supp 128, 133; *see,* 15 Fletcher Cyclopedia of the Law of Private Corporations § 7165.50, at 460).

The corporate law doctrine of de facto merger was developed for several reasons: to protect the seller's creditors, to assess taxes, and to protect tax interests of the buyer's dissenting shareholders *(see, Turner v Bituminous Cas. Co.,* 397 Mich 406, 417-418, 244 NW2d 873, 877-878; Phillips, *Product Line Continuity and Successor Corporation Liability,* 58 NYU L Rev 906, 909).* In the context of an action against a successor corporation for tort liability, however, those considerations are not relevant. "While dissenting shareholders need protection against alteration of their investment rights, tort claimants need protection against attempts by ongoing businesses to avoid liability through transfer of their operations to another legal entity" *(Knapp v North Am. Rockwell Corp.,* 506 F2d 361, 371 [Rosenn, J., concurring], *cert denied* 421 US 965).

Public policy considerations dictate that, at least in the context of tort liability, courts have flexibility in determining whether a transaction constitutes a de facto merger. While factors such as shareholder and management continuity will be evidence that a de facto merger has occurred *(see, Ladjevardian v Laidlaw-Coggeshall, Inc.,* 431 F Supp 834), those factors alone should not be determinative. "It is apparent from the nature of the inquiry required that the court is to make, on a case-by-case basis, an analysis of the weight and impact of a multitude of factors that relate to the corporate creation, succession, dissolution, and successorship" *(Santa Maria v Owens-Illinois, Inc.,* 808 F2d 848, 861).

■ Additionally, plaintiff has raised a material issue of fact regarding defendant's duty to warn of a defective condition. Defendant knew or should have known of the location of the plate-bending roller and had provided other customers of Bertsch with information about safety measures. Defendant received considerable revenues from servicing Bertsch ma-

chines, as well as from providing spare parts, engineering, and retrofitting packages, and therefore has derived an actual economic advantage *(see, Schumacher v Richards Shear Co., supra,* at 247).

We decline to address whether the Court of Appeals would adopt the "product line" or "continuity of enterprise" theory of liability and note only that there are no facts herein which would warrant our consideration or application of either theory *(see, Schumacher v Richards Shear Co., supra,* at 243). Finally, we reject defendant's assertion that State successor liability was preempted by the proceedings in bankruptcy *(see, Wensing v Paris Indus.-N. Y., supra,* at 167).

Accordingly, the order of the court should be affirmed.

PINE, BALIO, FALLON and DOERR, JJ., concur.

Order unanimously affirmed, with costs.