Dutton v Young Men's Christian Assn. of Buffalo Niagara (2022 NY Slip Op 04238)

Dutton v Young Men's Christian Assn. of Buffalo Niagara

2022 NY Slip Op 04238

Decided on July 1, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 1, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., LINDLEY, CURRAN, WINSLOW, AND BANNISTER, JJ.

206 CA 21-00512

[*1]ROGER DUTTON, PLAINTIFF-APPELLANT,
v
YOUNG MEN'S CHRISTIAN ASSOCIATION OF BUFFALO NIAGARA, DEFENDANT-RESPONDENT. 

JANET, JANET & SUGGS, LLC, BALTIMORE, MARYLAND (BRENDA A. HARKAVY OF COUNSEL), AND THE ABBATOY LAW FIRM, PLLC, ROCHESTER, FOR PLAINTIFF-APPELLANT.
PHILLIPS LYTLE LLP, BUFFALO (RYAN A. LEMA OF COUNSEL), FOR DEFENDANT-RESPONDENT. 

 Appeal from an order of the Supreme Court, Erie County (Deborah A. Chimes, J.), entered March 30, 2021. The order granted the motion of defendant to dismiss the complaint. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion is denied, and the complaint is reinstated.
Memorandum: Plaintiff commenced this personal injury action pursuant to the Child Victims Act (see CPLR 214-g) alleging that, as a child in the 1950s, he was subjected to repeated sexual abuse by an employee of Young Men's Christian Association of Niagara Falls, Inc. (YMCA Niagara Falls). Plaintiff further alleged that defendant, Young Men's Christian Association of Buffalo Niagara (YMCA Buffalo), is liable for the actions and omissions of YMCA Niagara Falls as a successor entity pursuant to either a de jure or de facto merger between the entities. More particularly, plaintiff alleged that the current iteration of YMCA Buffalo developed as a result of its merger with YMCA Niagara Falls, pursuant to which YMCA Buffalo took over the operation of YMCA Niagara Falls' facilities and branches, absorbed existing YMCA Niagara Falls staff, and effected a continuity of management, personnel, physical location, assets, and general business operations of the YMCA Niagara Falls facilities.
YMCA Buffalo moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7). YMCA Buffalo contended that it was not liable as a successor to YMCA Niagara Falls because documentary evidence conclusively established that the entities did not merge. Rather, YMCA Niagara Falls was judicially dissolved by order pursuant to Not-For-Profit Corporation Law § 1404 (d), the National Council of Young Men's Christian Associations of the United States of America (Y-USA) then assumed control of YMCA Niagara Falls' property, and Y-USA later agreed to transfer the property to YMCA Buffalo pursuant to a transfer agreement. YMCA Buffalo also contended that the
de facto merger doctrine did not apply as a matter of law because that doctrine involves the purchase of assets of one corporation by another and requires a transaction between the two purportedly merged entities, but here YMCA Buffalo did not purchase assets or otherwise transact with YMCA Niagara Falls because that entity was dissolved, its assets were transferred to the intermediary Y-USA, and only subsequently did Y-USA transfer the assets to YMCA Buffalo.
Supreme Court agreed with YMCA Buffalo that the documentary evidence conclusively established that the de facto merger doctrine was inapplicable as a matter of law, and the court thus granted that part of the motion pursuant to CPLR 3211 (a) (1). The court did not rule on that part of the motion pursuant to CPLR 3211 (a) (7). Plaintiff appeals, and we now reverse.
"On a motion to dismiss a complaint pursuant to CPLR 3211, we must liberally construe the pleading and 'accept the facts as alleged in the complaint as true, accord plaintiff[] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory' " (Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co., Inc., 37 NY3d 169, 175 [2021], rearg denied 37 NY3d 1020 [2021], quoting Leon v Martinez, 84 NY2d 83, 87-88 [1994]). "Whe[re], as here, a defendant moves for dismissal of . . . cause[s] of action under CPLR 3211 (a) (1), the[ ] documentary evidence must 'utterly refute[] plaintiff's factual allegations, conclusively establishing a defense as a matter of law' " (id., quoting Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]).
With respect to the substantive law at issue, as a general rule, "a corporation which acquires the assets of another is not liable for the torts of its predecessor" (Schumacher v Richards Shear Co., 59 NY2d 239, 244 [1983]). There are exceptions, however, and thus "[a] corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations" (id. at 245). Plaintiff relies exclusively on the second exception, which implicates the de facto merger doctrine (see Sweatland v Park Corp., 181 AD2d 243, 245 [4th Dept 1992]). The de facto merger doctrine is "based on the concept that a successor that effectively takes over a [corporation] in its entirety should carry the predecessor's liabilities as a concomitant to the benefits it derives from the good will purchased," which "is consistent with the desire to ensure that a source remains to pay for the victim's injuries" (Grant-Howard Assoc. v General Housewares Corp., 63 NY2d 291, 296-297 [1984]; see Simpson v Ithaca Gun Co. LLC, 50 AD3d 1475, 1476 [4th Dept 2008], lv denied 11 NY3d 709 [2008]).
"Traditionally, courts have considered several factors in determining whether a de facto merger has occurred: (1) continuity of ownership; (2) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (4) a continuity of management, personnel, physical location, assets, and general business operation" (Sweatland, 181 AD2d at 245-246). Nonetheless, " '[n]ot all of these factors are needed to demonstrate a merger; rather, these factors are only indicators that tend to show a de facto merger' " (id. at 246). Indeed, "[p]ublic policy considerations dictate that, at least in the context of tort liability, courts have flexibility in determining whether a transaction constitutes a de facto merger" (id.; see Lippens v Winkler Backereitechnik GmbH [appeal No. 2], 138 AD3d 1507, 1510 [4th Dept 2016]). The factors are therefore "analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of the successor to absorb and continue the operation of the predecessor" (Matter of AT & S Transp., LLC v Odyssey Logistics & Tech. Corp., 22 AD3d 750, 752 [2d Dept 2005]; see Tap Holdings, LLC v Orix Fin. Corp., 109 AD3d 167, 176 [1st Dept 2013]). In sum, when evaluating the applicability of the de facto merger doctrine, "the court should analyze each situation on a case-by-case basis" (Lippens, 138 AD3d at 1510; see Sweatland, 181 AD2d at 246).
Here, the primary dispute between the parties does not relate to the evaluation of the de facto merger factors, but instead concerns the threshold issue of whether the court properly determined that the de factor merger doctrine is inapplicable as a matter of law under the circumstances of this case. We agree with plaintiff that the court erred in that regard.
Accepting the facts as alleged in the complaint as true and according plaintiff the benefit of every possible favorable inference, we conclude on this record that YMCA Niagara Falls, having experienced a decline in revenue and being unable to pay its debts, filed a petition for dissolution pursuant to Not-For-Profit Corporation Law
§ 1404 (d) for the purpose of allowing YMCA Buffalo to acquire its assets and continue its operations and programming. In 2005, Supreme Court (Kloch Sr., A.J.) granted the petition, but did so with conditions that were consistent with the purpose of the dissolution. In particular, the court ordered dissolution of YMCA Niagara Falls "with the proviso and understanding that [Y-USA] will transfer the property of [YMCA Niagara Falls] to [YMCA Buffalo]." The dissolution order also imposed the conditions that YMCA Niagara Falls' facility could not be relocated without further court order, that YMCA Buffalo use its best efforts to make physical changes to [*2]the facility and continue programming, and that certain numbers of board and trustee members of YMCA Niagara Falls be elected to the respective boards of YMCA Buffalo. On the whole, the dissolution specifically contemplated, and was conditioned upon, the transfer of YMCA Niagara Falls' assets and operations to YMCA Buffalo.
Here, however, YMCA Buffalo nonetheless asserts, and Supreme Court (Chimes, J.) agreed, that the next step in the transaction—the temporary transfer of YMCA Niagara Falls' assets to Y-USA pursuant to Not-For-Profit Corporation Law § 1404 (d)—renders the de facto merger doctrine inapplicable as a matter of law. We reject that conclusion for several interrelated reasons.
First, the formalistic position of the court and YMCA Buffalo ignores the principle that the applicability of the de facto merger doctrine must be "analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of the successor to absorb and continue the operation of the predecessor" (AT & S Transp., LLC, 22 AD3d at 752; see Tap Holdings, LLC, 109 AD3d at 176). The record, viewed in the appropriate light, indicates that YMCA Buffalo intended to absorb and continue operation of YMCA Niagara Falls. The temporary transfer of YMCA Niagara Falls' property to the intermediary Y-USA pursuant to the statute was not an open-ended commitment providing Y-USA with discretion to manage or sell the assets (cf. N-PCL 1404 [d]); to the contrary, Y-USA had no choice in the matter inasmuch as the dissolution order was conditioned on the property being transferred to YMCA Buffalo so that it could continue YMCA Niagara Falls' operation.
Second, to the extent that YMCA Buffalo suggests, and the court agreed, that the mere presence of an intermediary in the transfer necessarily obviates application of the de facto merger doctrine, that conclusion lacks merit (see generally Lippens, 138 AD3d at 1509-1510; Sweatland, 181 AD2d at 244-246).
Third, we agree with plaintiff that, contrary to YMCA Buffalo's suggestion, a not-for-profit corporation may continue to transfer assets and wind up business affairs even after dissolution, which is precisely what YMCA Niagara Falls did here (see N-PCL 1006 [a] [1]; 1115 [a]). The dissolution order was granted subject to the condition that Y-USA transfer the property of YMCA Niagara Falls to YMCA Buffalo. Subsequently, YMCA Niagara Falls, along with YMCA Buffalo and Y-USA, entered into the transfer agreement, which recognized that YMCA Niagara Falls had "managed the [p]roperty in a wind down period" up until the time of the transfer agreement (accord N-PCL 1006 [a] [1]) and that Y-USA had, subject to Not-For-Profit Corporation Law
§ 1404 (d) and the dissolution order, taken possession of the property and agreed to immediately transfer the property to YMCA Buffalo on the date of the transfer agreement. In other words, the transfer agreement—to which YMCA Niagara Falls, although dissolved, was a party—specifically contemplated that YMCA Niagara Falls' assets were to be immediately transferred, albeit through a statutory and court-ordered intermediary, to YMCA Buffalo (see generally Lippens, 138 AD3d at 1510). The transaction, although perhaps not formally one, was "structured as a purchase of assets[, which] may be deemed to fall within the exception to nonliability as a de facto merger" (Menche v CDx Diagnostics, Inc., 199 AD3d 678, 680 [2d Dept 2021] [emphasis added]; see AT & S Transp., LLC, 22 AD3d at 752; Matter of New York City Asbestos Litig., 15 AD3d 254, 256 [1st Dept 2005]).
Still, YMCA Buffalo insists that the de facto merger doctrine cannot apply because the disposition of YMCA Niagara Falls' assets was dictated by the Not-For-Profit Corporation Law, and neither the statute nor the transfer agreement transferred YMCA Niagara Falls' tort liabilities to YMCA Buffalo. We agree with plaintiff, however, that YMCA Buffalo's assertion lacks merit. While neither the Not-For-Profit Corporation Law nor the transfer agreement provided for YMCA Buffalo's assumption of YMCA Niagara Falls' then-unknown tort liabilities (cf. former N-PCL 1005), that fact is immaterial here because plaintiff's theory of liability is not based on an express or implied assumption of YMCA Niagara Falls' tort liability through statute or contract, i.e., the first exception to the general rule of successor nonliability (see Sweatland, 181 AD2d at 244-245). Instead, plaintiff is relying upon the common-law doctrine of de facto merger under the second exception, which is an equitable remedy—consistent with the desire to ensure that a source remains to pay for injuries caused by the predecessor's torts—premised on the concept that a successor that effectively takes over a corporation in its entirety should carry the [*3]predecessor's liabilities as a concomitant to the benefits derived from acquiring the goodwill of the predecessor (see Grant-Howard Assoc., 63 NY2d at 296).
YMCA Buffalo's related assertion that plaintiff's recourse is against YMCA Niagara Falls only is similarly without merit. As plaintiff contends, even if he had a viable claim against YMCA Niagara Falls, that would not prevent him from pursuing his de facto merger theory of successor liability against YMCA Buffalo because, if there are circumstances warranting imposition of liability on a successor corporation, "the injured party can elect to proceed against the defunct corporation, the successor corporation, or both" (id. at 297; see 1A NY PJI3d 2:120 at 797 [2022]).
Inasmuch as imposition of successor liability on the theory of de facto merger is not foreclosed as a matter of law under the circumstances of this case, the question becomes whether the documentary evidence submitted by YMCA Buffalo in support of its motion to dismiss conclusively establishes that the de facto merger exception to the general rule of successor nonliability does not apply here (see CPLR 3211 [a] [1]). Upon our evaluation of the factors, we agree with plaintiff that the documentary evidence does not conclusively establish the inapplicability of the de facto merger doctrine (see Shea v Salvation Army, 169 AD3d 1081, 1083 [2d Dept 2019]).
First, with respect to the continuity of ownership factor, "[s]ince, unlike for-profit corporations, nonprofits do not have owners, . . . continuity of ownership is not a sine qua non of de facto merger of nonprofits" (Ring v Elizabeth Found. for the Arts, 136 AD3d 525, 527 [1st Dept 2016]). Nonetheless, that factor is not entirely inapplicable to not-for-profit corporations (see id.). Instead, "[o]ne approach to determining continuity of ownership in the nonprofit situation is to look at the boards of the nonprofits" (id.). Here, the documentary evidence does not refute a continuity of "ownership" inasmuch as the dissolution order and transfer agreement required that two board members and one trustee member of YMCA Niagara Falls be elected to serve on the respective boards of YMCA Buffalo (cf. id.).
Second, the documentary evidence tends to show "a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible" (Sweatland, 181 AD2d at 245-246). Here, YMCA Niagara Falls was dissolved by court order on November 7, 2005, with the proviso that its property be transferred from Y-USA to YMCA Buffalo, and YMCA Niagara Falls thereafter continued to manage the property while winding up its affairs until December 1, 2005, at which time its property was transferred to YMCA Buffalo.
Third, the documentary evidence also tends to show that YMCA Buffalo assumed "the liabilities ordinarily necessary for the uninterrupted continuation" of the operations of YMCA Niagara Falls (id. at 246). In addition to assuming all known and liquidated liabilities of YMCA Niagara Falls, YMCA Buffalo also became responsible for a host of liabilities to ensure continued operation, including obligations to undertake a concerted effort to increase programming and membership at the YMCA Niagara Falls facility; to clean, refurbish, upgrade, and repair the facility; and to implement appropriate staffing and training at the facility.
Fourth, the documentary evidence tends to show "a continuity of management, personnel, physical location, assets, and general business operation" of YMCA Niagara Falls (id.). Following the transaction, YMCA Buffalo continued operations and programming at YMCA Niagara Falls' physical location, which became a branch of YMCA Buffalo. In addition, under the transfer agreement, YMCA Buffalo agreed to give current personnel of YMCA Niagara Falls preference in maintaining their jobs and for training, incorporate YMCA Niagara Falls' mission, and allow the specified board and trustee members of YMCA Niagara Falls to serve in managerial roles on the respective boards of YMCA Buffalo. Moreover, the transfer agreement provided that YMCA Buffalo also received all tangible and intangible assets of YMCA Niagara Falls, including furniture, fixtures, computers, supplies, "know-how . . . and other operational information," use of trade names, membership lists, goodwill, records, cash and deposits, accounts receivable, real property, vehicles, and telephone numbers (see e.g. Energy Coop. of Am., Inc. v Luigi's Family Bakery, Inc., 170 AD3d 1629, 1630 [4th Dept 2019]; Fitzgerald v Fahnestock & Co., 286 AD2d 573, 575 [1st Dept 2001]; Sweatland, 181 AD2d at 244-245).
Finally, YMCA Buffalo contends, as an alternative ground for affirmance, that the [*4]complaint should be dismissed pursuant to CPLR 3211 (a) (7) on the basis that plaintiff failed to state a cause of action. Here, the court did not address that part of YMCA Buffalo's motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, thereby implicitly denying that part of the motion (see Cleary v Walden Galleria LLC, 145 AD3d 1524, 1526 [4th Dept 2016]; Augeri v Roman Catholic Diocese of Brooklyn, 225 AD2d 1105, 1106 [4th Dept 1996]; Brown v U.S. Vanadium Corp., 198 AD2d 863, 864 [4th Dept 1993]). Although YMCA Buffalo was not aggrieved by the order and thus could not have cross-appealed (see Cleary, 145 AD3d at 1526; Matter of Tehan [Tehan's Catalog Showrooms, Inc.] [appeal No. 2], 144 AD3d 1530, 1531 [4th Dept 2016]), YMCA Buffalo nonetheless properly raises its contention as an alternative ground for affirmance of the order granting its motion (see Cleary, 145 AD3d at 1526; see generally Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 545-546 [1983]). YMCA Buffalo's contention, however, lacks merit. Upon liberally construing the complaint, accepting the facts as alleged therein as true, and according plaintiff the benefit of every possible favorable inference (see Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP, 37 NY3d at 175), we conclude that the complaint states causes of action based on successor liability under a theory of de facto merger (see State Farm Fire & Cas. Co. v Main Bros. Oil Co., 101 AD3d 1575, 1579 [3d Dept 2012]).
Entered: July 1, 2022
Ann Dillon Flynn
Clerk of the Court