# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TRACY BUMPUS, surviving spouse
and personal representative of the
estate of SCOTT ALAN BUMPUS,
deceased; ROSS BUMPUS, surviving
son of SCOTT ALAN BUMPUS,
deceased; BRIAN HUETHER,
surviving spouse and personal
representative of the estate of SHELLI
HUETHER, deceased, and guardian of
AH and LH, the minor children of
SHELLI HUETHER, deceased;
BRANDON WRIGHT, surviving
spouse and personal representative of
the estate of JESSICA WRIGHT,
deceased, and guardian of J.W. and
B.W., the minor children of JESSICA
WRIGHT, deceased,

         Plaintiffs,

         v.

USAC ROSS LLC d/b/a ROSS
ALUMINUM; et. al.,

         Defendants.

) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )

C.A. No. N22C-09-008 JRJ

Date Submitted:   September 13, 2023
Date Decided:    December 5, 2023

## MEMORANDUM OPINION

*Upon USAC Ross, LLC's Motion to Dismiss:*
**GRANTED**


*Upon P&THE Manufacturing, LLC, P&THE Manufacturing Acquisition, LLC, and P&THE Holdings, LLC's Motion to Dismiss*:
**DENIED**[1]

Beverly L. Bove, Esq., and Vincent J. X. Hedrick, II, Esq., Bove & Hedrick, 1020 West 18th Street, P.O. Box 1607, Wilmington, DE 19899. Joseph P. Musacchio, Esq., and Anthony Tarricone, Esq., Kreindler & Kreindler, LLP; Kathryn E. Barnett, Esq., Morgan & Morgan; Douglas P. Desjardins, Esq., Pangia Law Group (*pro hac vice*). Attorneys for Plaintiffs.

Jeffrey L. Moyer, Esq., and Griffin A. Schoenbaum, Esq., Richards, Layton & Finger, P.A., One Rodney Square, 920 North King St., Wilmington, DE 19801. John H. Bae, Esq., Joshua Shapiro, Esq., Andrew H. Cox, Esq., Jonathan Nussbaum, Esq., Thompson Hine, LLP (*pro hac vice*). Attorneys for Defendants.

**JURDEN, P.J.**

---

[1] Defendants jointly filed the instant Motion to Dismiss; however, the Court finds it appropriate to separate USAC Ross, LLC from the P&THE Defendants.

## I. INTRODUCTION

This wrongful death action arises from an airplane crash that killed Senior Master Sergeant Scott Alan Bumpus, Captain Jessica Wright, and Lieutenant Colonel Shelli Huether (collectively, "Decedents"). Plaintiffs, surviving family members of Decedents, allege that defects in the casting of the aircraft's cylinder head caused the engine to fail and the plane to crash. Before the Court is Defendants'[2] Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) which has been converted to a Motion for Summary Judgment under Rule 56.[3] Defendants argue the Complaint does not establish a theory of successor liability under any applicable law. For the reasons that follow, Defendants' Motion for Summary Judgment is **GRANTED** as to USAC Ross, LLC and **DENIED** as to P&THE.[4]

## II. BACKGROUND

On September 8, 2020, a Piper PA-28-181 Archer III aircraft departed from McMinnville, Tennessee.[5] Shortly after takeoff, the aircraft's engine failed, causing

---

[2] Moving Defendants are: USAC Ross, LLC; P&THE Manufacturing, LLC; P&THE Manufacturing Acquisition, LLC; and P&THE Holdings, LLC. Plaintiffs filed a claim for default judgment against Ross Aluminum, LLC that has been deferred until the instant motion is decided. Order for Default J., Trans. ID 70490632 (July 26, 2023).

[3] The parties conducted discovery regarding the successor liability claims after which matters outside the pleadings were presented to the Court, as such Defendants' Motion to Dismiss will be treated and disposed of as a Motion for Summary Judgment. *See* Super. Ct. Civ. R. 12(b)(6); Pls.' Opp'n at 2 n.1, Trans. ID 70287957 (June 29, 2023); Defs.' Reply Br. at 1, Trans. ID 70388940 (July 14, 2023).

[4] P&THE Manufacturing, LLC ("Manufacturing"), P&THE Manufacturing Acquisition, LLC ("Acquisition") and P&THE Holdings, LLC ("Holdings") will collectively be referred to as "P&THE." Defs.' Op. Br. at 1, Trans. ID 68718757 (Dec. 22, 2022).

[5] Am. Compl. ¶¶ 1, 22, Trans. ID 68521383 (Dec. 6, 2022).

3

the plane to crash.[6]  A post-crash investigation revealed that the aircraft's Number Four engine cylinder head fractured, causing engine failure.[7]  Ross Aluminum Castings, LLC ("Ross") performed the casting of the cylinder head in coordination with the cylinder manufacturer, Continental Motors.[8]

Ross, a Delaware limited liability company (LLC),[9] was in the business of casting aluminum parts at its Ohio facility, including engine cylinder components.[10] Ross had an outstanding loan with SummitBridge National Investments VI, LLC ("SummitBridge"), a Delaware LLC,[11] secured by substantially all of Ross' business assets.[12]  Ross defaulted on its loan with SummitBridge, which commenced foreclosure proceedings on Ross' assets.[13]  Pursuant to a consent order issued by the Court of Common Pleas of Chester County, Pennsylvania, Ross entered into receivership on March 6, 2020.[14]  The order permitted a court appointed receiver "to sell all or any portion of the Company assets and to do all acts and things necessary or advisable in connection with such sale(s)."[15]

---

[6] *Id.* ¶ 23.
[7] *Id.* ¶ 25.
[8] *Id.* ¶ 28.
[9] *Id.* ¶ 9.
[10] Pls.' Opp'n ¶ 3.
[11] Pls.' Opp'n Ex. D at 1 ("Purchase and Sale Agreement").
[12] Pls.' Opp'n ¶ 3.
[13] *Id.*
[14] *Id.*
[15] Pls.' Opp'n Ex. C at 3-4 ("Consent Order").

On March 20, 2020, USAC Ross, LLC ("USAC"), a Delaware LLC,[16] purchased Ross' assets from the court-appointed receiver for the benefit of Summitbridge through a Purchase and Sale Agreement ("PSA").[17] The PSA includes a Secured Party Bill of Sale which lists the manufacturing facility, equipment, and machinery used in Ross' aluminum casting business.[18] Additionally, the PSA contains a choice of law provision, which states:

> [t]his agreement shall be interpreted, and the rights and liabilities of the parties hereto shall for all purposes be governed by and construed and enforced in accordance with the laws of the state of New York applicable to agreements executed, delivered and performed within such jurisdiction, except for matters mandatorily governed by the laws of the state where the premises or any portion thereof is located.[19]

The same day the PSA was executed, the Ohio facility that USAC purchased was essentially closed as of March 20, 2020, due to the COVID-19 pandemic.[20] Later, in May of 2020, an explosion occurred at the Ohio facility that shut down all operations until March of 2021, at which point USAC began to operate the facility.[21]

---

[16] Am. Compl. ¶ 8.

[17] *Id.* ¶ 14a; Purchase and Sale Agreement at 1.

[18] Pls.' Opp'n ¶ 7; The Bill of Sale included in the PSA lists the assets conveyed to USAC as follows:

> [a]ll personal property assets of the Debtors physically located in the State of Ohio including, without limitation, all Accounts, Securities Entitlements, Securities Accounts, Commodity Accounts, Commodity Contracts and Investment Property, Deposit Accounts, Instruments, Documents, Chattel Paper, Inventory, goods of every nature, Equipment, Fixtures, Agricultural Liens, as-extracted collateral, Commercial Tort Claims, Letter of Credit rights, General Intangibles[.]

Pls.' Opp'n Ex. E ("Secured Party Bill of Sale").

[19] Purchase and Sale Agreement at 12.

[20] Pls.' Opp'n ¶ 15.

[21] *Id.*

On March 31, 2022, USAC sold the assets it purchased under the PSA to Acquisition, a Michigan LLC, through an Asset Purchase Agreement ("APA").[22] The APA contains a Michigan choice of law provision.[23]

Plaintiffs filed suit on September 1, 2022,[24] alleging negligence, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, breach of express warranty, survival, and wrongful death.[25] Plaintiffs' claims against Defendants rest on a theory of successor liability.

### III.  STANDARD OF REVIEW

#### A.  Rule 12(b)(6)

On a motion to dismiss, pursuant to Superior Court Rule 12(b)(6), the Court may dismiss an action for "failure to state a claim upon which relief can be granted[.]"[26] When matters outside the pleading are presented, the motion will be treated as one for summary judgment in accordance with Rule 56.[27]

---

[22] Pls.' Opp'n Ex. L at 1 ("Asset Purchase Agreement").

[23] *Id.* at 10.  The relevant portion of the choice of law provision states:
> [a]ll differences or disputes which may arise between the parties to this Agreement concerning the entry into this Agreement or their respective rights and obligations hereunder shall be governed by the laws of the State of Michigan, without regard to the application of Michigan conflict of law principles and shall be resolved by private arbitration before a single arbitrator.

[24] Compl., Trans. ID 68017247 (Sept. 1, 2022).  Plaintiffs submitted an Amended Complaint on December 6, 2022.  Am. Compl. 1-22.

[25] Am. Compl. 10-22.

[26] Super. Ct. Civ. R. 12(b)(6).

[27] Super. Ct. Civ. R. 12(b).

## B. Rule 56

Summary judgment is appropriate where "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law."[28] The movant holds the burden to prove its claim is supported by undisputed facts, and if met, the non-moving party must show a genuine issue for trial.[29] Summary judgment will not be granted where "a material fact is in dispute" or "it seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[30] In making this determination, "the Court views the facts in the light most favorable to the non-moving party."[31]

## IV. DISCUSSION

### A. Choice of Law

As a threshold matter, the Court must determine which state's substantive law applies to the analysis of USAC's acquisition of Ross' assets and the successor liability claims at issue.[32] When analyzing choice of law provisions, Delaware follows the Restatement (Second) of Conflict of Laws ("Restatement").[33] Pursuant

---

[28] Super. Ct. Civ. R. 56(c).
[29] *Unbound Partners Limited Partnership v. Invoy Holdings Inc.*, 251 A.3d 1016, 1024 (Del. Super. 2021).
[30] *Id.* (internal quotation marks omitted).
[31] *Id.*
[32] *See Pharmathene v. Siga Technologies*, 2008 WL 151855, at *6 (Del. Ch. Jan. 16, 2008) ("Before applying the 12(b)(6) standard, the Court must determine, as a preliminary matter, which state's substantive law governs. . .").
[33] *Focus Fin. P'rs, LLC v. Holsopple*, 241 A.3d 784, 803 (Del. Ch. 2020) ("Delaware follows the *Restatement (Second) of Conflict of Laws* when determining what law governs a contract.") (emphasis in original).

to Section 187(2) of the Restatement, a valid choice of law provision in a contract will be applied *unless either*:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.[34]

> i.     New York has no Substantial Relationship to the Parties or the Transaction

The Court first considers whether New York law applies. Plaintiffs argue New York law should govern because the choice of law provision in the PSA says so.[35] Defendants argue Delaware law should govern because Delaware has the most substantial relationship to the PSA,[36] and the Court should not enforce the PSA choice of law provision.[37] According to Defendants, New York has no substantial relationship to the parties or the transaction, and there is no reasonable basis for the parties' choice under Section 187(2)(a) of the Restatement.[38] In support of this

---

[34] Restatement (Second) of Conflicts of Laws § 187(2) (1971).

[35] Am. Compl. ¶ 14b.

[36] Defs.' Op. Br. at 10. Defendants argue that USAC is not liable as a successor to Ross under Delaware, Ohio, or New York law. *See* Defs.' Op. Br. at 10-21. Plaintiffs argue successor liability exists between USAC and Ross solely under New York law. *See* Am. Compl. at 5-7; Pls.' Opp'n at 18-29.

[37] Defs.' Op. Br. at 8-10.

[38] *Id.* at 11. Plaintiffs contend Defendants did not adequately argue the exception in their Opening Brief and therefore waived the argument. *See* Pls.' Opp'n at 13-14. However, Defendants in their Opening Brief state the entire relevant provision of the Restatement and allege where there is "no relationship to the parties or the transaction, there is no reason to apply New York law." Defs.' Op. Br. at 11. Waiver is a matter of discretion for the Court and is based on fairness since a delayed

8

contention, Defendants point out: (1) no party to the transaction is a citizen of New York, they are Delaware LLCs; (2) the PSA concerns the purchase of assets and land located in Ohio and Washington; (3) the PSA calls for payments to be made from one Delaware LLC to another; and (4) none of the actions alleged in the Amended Complaint occurred in New York.[39]  In the alternative, Defendants argue Ohio law governs because that is where the facility at issue is located.[40]

Plaintiffs claim there is nothing unreasonable or irrational about the PSA choice of law provision.[41]  They argue that, not only does New York substantive law apply, but the Court should analyze the choice of law issue itself under New York law.[42]  In the alternative, Plaintiffs argue that, even under Delaware choice of law rules, the PSA choice of law provision should be enforced.[43]

---

argument can deprive the opposing party of notice and a chance to respond. *See Jung v. El Tinieblo Intern., Inc.*, 2022 WL 16557663, at *9 (Del. Ch. Oct. 31, 2022).  Plaintiffs were on notice of the argument Defendants were making and the principles they were relying on.  Further, both parties have adequately briefed the exception at issue.  Therefore, the Court will decide whether the exception applies.

[39] Defs.' Op. Br. at 10-11.

[40] *Id.* at 15-17.

[41] Pls.' Opp'n at 13-17.  Plaintiffs cite to the deposition of Mr. Golden as the basis for this assertion. Mr. Golden is one of the appointed managers of USAC as well as the General Counsel, and Chief Financial Officer.  *Id.* ¶ 6.  During the deposition of Mr. Golden, Plaintiffs' counsel asked him the following question: "There's nothing irrational or unreasonable about the parties of this agreement choosing New York law?" to which Mr. Golden responded, "Correct."  *Id.* at 14.

[42] *Id.* at 9-10.  Plaintiffs argue that because the choice of law provision in the PSA designates New York law it includes procedural laws as well as substantive.  *Id.*

[43] *Id.* at 13-17.

As the forum state, Delaware will apply its own choice of law rules to decide the governing law in a case.[44] Prior to determining whether the choice of law provision applies, the Court must first determine whether there is an actual conflict between the laws at issue.[45] A "false conflict" arises when there is "no material difference between the laws of competing jurisdiction, in which case the court should avoid the choice of law analysis altogether."[46]

Plaintiffs ask the Court to apply New York successor liability law as opposed to Delaware law.[47] Under New York law, the transfer of stock is not part of a *de facto* merger analysis,[48] whereas it is a requirement under Delaware's *de facto*

---

[44] *See Matter of Estate of Sullivan*, 2021 WL 668005, at *3 (Del. Ch. Feb. 22, 2021) ("'Under general conflict of laws principles, the forum court will apply its own conflict of laws rules to determine the governing law in a case.' Therefore, I apply Delaware's choice of law principles in a conflict of laws analysis . . .") (quoting *Tyson Foods, Inc. v. Allstate Ins. Co.*, 2011 WL 3926195, at *5 (Del. Super. Aug. 31, 2011); *Nat'l Acceptance Co. of California v. Mark S. Hurm, M.D., P.A.,* 1989 WL 70953, at *2 (Del. Super. June 16, 1989) ("As the forum state, Delaware must apply its own choice of law rule[s]; and thereby, chose the State with laws applicable to the substantive rights of the parties . . .").

[45] *See Gea Systems North America LLC v. Golden State Foods Corp.*, 2020 WL 3047207, at *4 (Del. Super. June 8, 2020) ("Even if there is an effective choice of law provision and the jurisdiction selected has some material relationship to the transaction, Delaware courts have declined to decide whether a particular jurisdiction's law applies if there is a 'false conflict.'").

[46] *Id.*

[47] Am Compl. 18-29.

[48] *See Dutton v. Young Men's Christian Association of Buffalo Niagara*, 171 N.Y.S.3d 276, 280 (N.Y. App. Div. 2022) ("[C]ourts have considered several factors in determining whether a de facto merger has occurred: (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (4) continuity of management, personnel, physical location, assets and general business operation.") (quoting *Sweatland v. Park Corp.*, 587 N.Y.S.2d 54 (N.Y. App. Div. 1992).

merger analysis.[49]  The elements constituting a *de facto* merger differ between New York law and Delaware law, thus the Court finds a genuine conflict exists between the two states' substantive laws, requiring the Court to conduct a full choice of law analysis.

As explained in *Change Capital Partners Fund I, LLC v. Volt Electrical Systems, LLC,* "with very limited exceptions, [Delaware] courts will enforce the contractual scheme that the parties have arrived at through their own self-ordering" since "[u]pholding freedom of contract is a fundamental policy of this State."[50]  That said, Delaware courts will enforce a contractual choice of law provision *as long as* the jurisdiction selected bears a "substantial relationship to the parties or the transaction."[51]  Comment *f* to Section 187 of the Restatement states that when the state of the chosen law has some substantial relationship to the parties or the contract,

---

[49] *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *15 (Del. Ch. Sept. 5, 2023) ("The elements necessary to create a de facto merger under Delaware law are the following: (1) one corporation transfers all of its assets to another corporation; (2) payment is made in stock, issued by the transferee directly to the shareholders of the transferring corporation; and (3) in exchange for their stock in that corporation, the transferee agreeing to assume all the debts and liabilities of the transferor.") (quoting *Magnolia's at Bethany, LLC v. Artesian Consulting Engineers, Inc.*, 2011 WL 4826106, at *3 (Del. Super. Sept. 19, 2011)).

[50] 2018 WL 1635006, at *4 (Del. Super. April 3, 2018) (quoting *Ascension Ins. Holdings, LLC v. Underwood*, 2015 WL 356002, at *4 (Del. Ch. Jan. 28, 2015)).

[51] *Sycamore Partners Management, L.P. v. Endurance American Insur*. Co., 2021 WL 761639, at *5 (Del. Super. Feb. 26, 2021) ("Delaware courts enforce contractual choice of law clauses *as long as* the jurisdiction chosen has a 'substantial relationship to the parties or the transaction . . .'") (emphasis added); *see also Vichi v. Koninklijke Philips Electronics, N.V.*, 85 A.3d 725, 766 (Del. Ch. 2014) ("Delaware Courts will honor a contractually-designed choice of law provision *so long as* the jurisdiction selected bears some material relationship to the transaction . . .") (emphasis added).

11

the parties will have had a reasonable basis for their choice.[52]  Comment *f* goes on to provide examples of what constitutes a substantial relationship; such as the place of performance, where a party is domiciled, the place of contracting, and where a party has its principal place of business.[53]

In *National Acceptance Co. of California v. Mark S. Hurm, M.D.* the court analyzed a California choice of law provision under Section 187(2)(a) of the Restatement.[54]  In *Hurm*, the defendant, a resident of Delaware, entered into lease agreements with Hempel Financial Corporation ("Hempel"),[55] a resident of California, concerning property located in Delaware and South Carolina.[56]  In determining whether the California choice of law provision had a substantial relationship to the parties, the *Hurm* court looked to the "most significant contacts theory" enumerated in Section 188 of the Restatement.[57]  Section 188(2) of the Restatement states:

---

[52] Restatement (Second) of Conflict of Laws § 187 cmt. *f* (1971).  The comment also addresses scenarios where a party may have a reasonable basis for choosing a state with which the contract has no physical connection, such as the choice to use English law rather than foreign law.  *Id.*
The comment cites to *Vita Food Products, Inc. v. Unus Shipping Company, Ltd*., a case from Nova Scotia, as an example of when choosing the laws of a state with no relationship to the parties may be valid.  1939 A.C. 277 P.C. (holding international parties may desire the familiar principles of English commercial law); Restatement (Second) of Conflict of Laws § 187 cmt. *f* (1971).
[53] Restatement (Second) of Conflict of Laws § 187 cmt. *f* (1971).
[54] 1989 WL 70953, at *1 (Del. Super. June 16, 1989).
[55] *Id.*  The lease agreements between Hempel and the defendant, were later assigned to the plaintiff. *Id.*
[56] *Id.*
[57] *Id.* at *3.  *See also Parks v. Horizon Holdings, LLC*, 2022 WL 2821337, at *6 (July 20, 2022) ("To assess which state has the greater interest, Delaware caselaw follows the 'most significant relationship' test, which stems from Section 6 of the Restatement.").  *See, e.g., Underhill Inv.*

[i]n the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.[58]

In *Hurm*, the court found: (1) the place of contracting was California, (2) the place of negotiations was in California and Delaware, (3) the place of performance[59] was California, (4) the location of the subject matter was Delaware and South Carolina, (5) and that while the defendant's domicile and place of residence was Delaware, Hempel's principal place of business was in California.[60] Thus, the *Hurm* court held that California law had a substantial relationship to the issue and that the California choice of law provision was enforceable under Section 187(2)(a) of the Restatement.[61]

---

*Corp. v. Fixed Income Discount Advisory Co.*, 319 Fed.Appx. 137, 141 (3d Cir. 2009) (holding New York had the most significant relationship to the dispute as it was the place of the alleged contracting, alleged performance, and where the subject matter was located); *Certain Underwriters at Lloyds, London v. Chemtura Corporation*, 160 A.3d 457, 460 (Del. 2017) ("New York was the principal place of business . . . and there were a number of contacts with New York over time . . . the most significant relationship among the parties for these contracts is New York.").

[58] *Nat'l Acceptance Co. of California*, 1989 WL 70953, at *3 (quoting The Restatement (Second) Conflict of Laws §188(2)).

[59] The *Hurm* court found the place of performance to be the payments made to Hempel's California address, not the property at issue in the agreements. *Id.*

[60] *Id.*

[61] *Id.* The Court then moved to a Section 187(2)(b) analysis and held that one of the lease agreements was contrary to Delaware public policy and the choice of law provision was invalid as to that agreement. *Id.* at *4.

The mere presence of a choice of law provision does not decide the analysis. Rather, courts have consistently held a substantial relationship existed between a choice of law provision and a state where one party had a connection to it outside of a choice of law provision in a contract.[62] Thus, there is no factual basis to support New York has a substantial relationship with one of the parties.

Under this backdrop, the Court applies the "most significant contacts theory" and finds: (1) the place of contracting was Delaware,[63] (2) performance concerned payments to be made from one Delaware LLC to another,[64] (3) the location of the subject matter was Ohio,[65] and (4) all parties to the agreement are incorporated in Delaware.[66] Thus, no factual support exists demonstrating that New York has substantial relationship to the parties or the transaction. Rather, under Section

---

[62] *See, e.g.*, *Coface Collections North America Inc. v. Newton*, 430 Fed.Appx. 162, 167 (3d Cir. 2011) (holding "[c]oface's incorporation in Delaware provides an adequate substantial relationship with the state of Delaware."); *Sycamore Partners Management*, 2021 WL 761639, at *6 ("Sycamore is incorporated in Delaware, giving the state a 'substantial relationship' to Sycamore"); *Focus Fin. P'rs,* 241 A.3d at 804 ("Focus Parent is a Delaware limited liability company, making Delaware its domicile. Under the *Restatement*, that connection provides a reasonable basis for selecting Delaware law.") (emphasis in original); *W.R. Berkley Corporation v. Dunai*, 2021 WL 1751347, at *1 (D. Del. May 4, 2021) (stating "a party always has a substantial relationship to the state where he is domiciled or has his principal place of business.") (internal quotation marks omitted); *Hambrecht & Quist Venture Partners v. American Medical International, Inc.*, 46 Cal.Rptr.2d 33 (Cal. Ct. App. 1995) (holding the parties had a reasonable basis for choosing Delaware law, because they were incorporated in Delaware).

[63] Defs.' Op. Br. at 10. Plaintiffs do not argue otherwise.

[64] Purchase and Sale Agreement at 2 (stating the purchase price was to be payable to Summitbridge, a Delaware LLC, with its principal place of business in Colorado).

[65] Am. Compl. ¶ 14a; Purchase and Sale Agreement at 1.

[66] Purchase and Sale Agreement at 1.

14

188(2) of the Restatement, the facts point to Delaware as the state having the most significant contacts over the claim.

Plaintiffs do not attempt to dispute the lack of a substantial relationship with New York. Instead, they argue the provision was not irrational and that the parties signed the PSA knowing the provision existed.[67] The Plaintiffs' argument that that mere presence of a choice of law provision is sufficient is unpersuasive. The exception to the Restatement exists to apply in instances where a choice of law provision is present in a contract but the state specified has no relationship with the claim. If the Court were to adopt Plaintiff's assertions that the presence of the choice of law provision is enough to find that New York law applies, it would effectively be rewriting the Restatement. While Plaintiffs cite to New York Obligation Law § 5-1401 as a basis for finding the provision rational, the New York Obligation Law discusses New York law provisions applying in New York.[68] Further, Plaintiffs do not provide any caselaw where a Delaware court has used or relied on § 5-1401.

---

[67] Plaintiffs try to rely on the deposition testimony of Mr. Golden; however, they do not assert a reasonable basis for the provision, they solely argue that it was not irrational. *See* Pls.' Opp'n at 14.

[68] *See* Pls.' Opp'n at 11-13. Moreover, in *IRB-Brasil Resseguros, S.A. v. Inepar Investments, S.A.*, the New York court noted the rationale behind Section 5-1401 was for New York courts to enforce New York choice of law provisions regardless of contacts with the state of New York. 20 N.Y.3d 310, 314 (N.Y. 2012) (stating "the legislature feared that New York courts would not recognize a choice of New York law [] on the ground that the particular contract had insufficient contact or relationship with New York") (internal quotation marks omitted). Plaintiffs additionally try and rely on *Opportunity Fund, LLC v. Epitome Sys., Inc.,* to support their argument; however, the Court finds the case to be distinguishable where in *Opportunity Fund* neither party argued for the enforcement (or non-enforcement) of the choice of law provision in the contract, and thus assumed the provision to pass muster under the Restatement. 912 F.Supp.2d 531, 547 (S.D. Ohio 2012).

Consequently, the Court finds New York bears no substantial relationship to the parties or the transaction and lacks any other reasonable basis for the application of New York law. For the reasons stated above and because Plaintiffs conceded they do not have a claim for successor liability against USAC under Delaware law,[69] the Court must **GRANT** Defendants' Motion for Summary Judgment as to USAC.

ii. P&THE Liability under Michigan Law

Plaintiffs and Defendants disagree as to whether P&THE is liable as a successor to USAC under Michigan law.[70] The Court finds that Defendants' Motion for Summary Judgment as to P&THE is not ripe. The parties are to engage in further discovery and briefing prior to the Court's issuance of a decision.

## V.    CONCLUSION

For the aforementioned reasons, Delaware's substantive law applies and Defendants' Motion for Summary Judgment is **GRANTED** as to USAC and **DENIED** as to P&THE.

---

[69] Oral Arg. (Sept. 13, 2023).

[70] Pls.' Opp'n at 29-32; Defs.' Reply Br. at 18-20. Both Parties acknowledge that the Michigan choice of law provision in the APA between Acquisition and USAC controls the issue of P&THE's successor liability. Pls.' Opp'n at 29; Defs.' Reply Br. at 18 n.11. The Parties do not dispute that under Section 187(2)(a) of the Restatement there is a substantial relationship between the parties and the choice of law provision because Acquisition is a Michigan LLC. *See* Pls.' Opp'n at 29; Defs.' Reply Br. at 18 n.11.

**IT IS SO ORDERED.**

/s/ Jan R. Jurden

Jan R. Jurden, President Judge

cc:    Prothonotary

17